Eastern District Court

Plaintiff: Terrance Prude,

-vs-

Defendants: Paula Stoudt and A. Titlbach.

Case #25-CV-_____

## Civil Complaint Pursuant To 42 U.S.C. 1983 Statute

## Parties Involved

(1) Plaintiff: I, Terrance Prude, am the sole plaintiff in this case, I'm incarcerated at Wisconsin Secure Program Facility ("WSPF") and the address is P.O. Box 1000, Boscobel Wisconsin 53805.

(2) Defendants: The defendants are: (a) Warden Paula Stoudt; (b) Business Office Manager A. Titlbach, all work at WSPF. The defendants are sued in both their OFFICIAL and INDIVIDUAL CAPACITIES and their contact addresses are WSPF, 1101 Morrison Drive, Boscobel Wisconsin 53805. Each defendants action and/or inaction were under color of state law. This case raises 3 claims: (1) Access To Court Backward Looking claim; (2) Bias Decisionmaker Due Process claim; and (3) Policy 309.45 .02 ("Attachment A") is unconstitutional vague & ambiguous as applied to the facts of this case.



## Claim #1:
## Backward Looking Access
## To Court Deprivation Claim

## Standard Of Review

(3) In order to state a claim for backward-looking denial of access to court claim a party must identify in the complaint the following: (1) a nonfrivolous underlying claim; (2) the official acts frustrating the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. See Snyder v. Nolan, 380 F.3d 279, 296 (7th Cir. 2004).

## Statement Of Facts

• Nonfrivolous Underlying Claim

(4) Magistrate judge, Stephen L. Crocker, of the Western District Court of Wisconsin issued a damaging decision, erroneously, against me in Terrance Prude v. Anthony Meli et al., Case #17-CV-336-slc, on August 19, 2024 (citation 2024 WL 3858836), on September

20, 2024 (see Exhibit #1 attached), on November 21, 2024 (see Exhibit #2 attached), and on February 3, 2025 (see Exhibit #3 attached). Additionally, District Judge James D. Peterson erroneously, and without jurisdiction, imposed a filing bar based on magistrate judge Crocker's rulings listed above from case Terrance Prude v. Sarah Cooper, Case #24-CV-338-jdp (W.D. Wis.) (citation 2024 WL 4582357) (see Exhibit #4 attached).

(5) I filed a timely notice of appeal to challenge each of these rulings by appealing to the Seventh Circuit Court of Appeals. I was ordered to pay in full the entire filing fee of $605.00. See Exhibit #5 attached.

(6) I sought to raise 11 nonfrivolous issues to the Seventh Circuit Court of Appeals in order to challenge the rulings listed above at paragraph ("par") 4.

(7) These 11 nonfrivolous issues are attached at Exhibit #6 herewith and I incorporate those arguments from Exhibit #6 titled "Issues To Be Raised In Good Faith To The Seventh Circuit Court Of Appeals" into this paragraph pursuant to Fed. R. Civ. P. Rule 10(c).[1] These issues

[1] See Williamson v. ___ 714 F.3d 432, 436 (7th Cir. 2013).

have arguable merit.[2] Also, see par 14-17 below for more details.

## • Defendants Acts Frustrating The Litigation

(8) A judge ordered the $605.00 to be paid in full from my prisoner's account. See Exhibits #5, #13 and #17.

(9) I submitted a money disbursement(s) to defendants, each, on separate occasions, with different court orders,[3] seeking to use both my regular and release accounts to pay the $605.00 fees in order to appeal the rulings listed above at par 4 to the 7th Circuit. The defendants denied each request. See Exhibit #8 attached.

(10) Each defendant referenced policy 309.45.02 as a basis for denying my requests to use both my regular and release accounts. However, this policy actually supports my requests to use my release account and undercuts defendants reliance on it to deny my request. See Exhibit #7 attached.

(11) The deadline to pay the $605.00 appellate filing fee was June 16, 2025. See Exhibit #5 attached.

---

[2] See Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000).
[3] See Court Orders attached marked Exhibits #5 and #13 and #17.



(12) Due to the defendants blocking my access to the 7th Circuit Court of Appeals (i.e., blocking me from paying the $605.00 filing fee) my case was dismissed due to my inability to pay. See <u>Exhibit #9</u> <u>attached.</u>

- <u>Remedy Award As Recompense But Otherwise Not Available In Future Suit</u>

(13) As a remedy for the defendants blocking my access to the 7th Circuit Court of Appeals, which sought a favorable ruling in my favor on those underlying merits of my issues to be raised, I seek the following remedy: (1) Have the rulings listed <u>above at par 4</u> vacated based on the merits explained <u>above at par 7</u> <u>and below at par 14-17</u>; (2) Have my $10,000 ordered released that was unlawfully taken and I be compensated $25.00 per day for every day my $10,000 was unlawfully seized and awarded $100.00 per day as a punitive-award for the unlawful seizing of my $10,000 for every day it was seized beginning December 8, 2016; (3) Have the defendants pay the fees imposed against me that she blocked me from challenging at the 7th Circuit Court of Appeals............; (4) have the filing

reversed/lifted allowing me to file federal claims in the Western District Court of Wisconsin; and (5) Have the right to be placed back before an Article 3 district court judge in Prude v. Meli et al. #17-CV-336(W.D. Wis.) as a result of the magistrate judge jurisdictional errors explained above at par 7 and as explained below at par 14-17. Moreover, please see below at par 18-23.

## More Details Of Arguable Merit Continued From Par 7 Above

(14) 28 U.S.C. 636(c)(1)'s text "any or all proceedings" is unconstitutional, as applied, to the facts of my civil case Prude v. Meli #17-CV-336(W.D. Wis.). Meaning, the statutory text does not provide notice that consenting parties are bound to their consents beyond the period where the magistrate judge "order[s] the entry of judgment in the case". When I appealed to the 7th Circuit Court of Appeals and won the appeal[4] the consent,[4A] which waived Article 3 judge jurisdiction and accepted magistrate judge

---

[4] See Prude v. Meli, 76 F.4th 648 (7th Cir. 2023).
[4A] See Exhibit #10-12 attached.

jurisdiction prior to the appeal taken, <u>did not continue to apply upon the 7th Circuit Court of Appeals remanding the case.</u> See Burnham v. North Chicago St. Ry. Co., 88 F. 627, 629-30 (7th Cir. 1898); U.S. v. Lee, 539 F. 2d 606, 608-09 (6th Cir. 1976) (citing Burnham); and In re Dorrai J.J., 349 Wis. 2d 691, 698-01, 836 N.W. 2d 860, 863-65 (Wis. Ct. App. 2013) (citing Burnham and Lee).

(15) 28 U.S.C. 636(c)(1)'s text "any or all proceedings" is unconstitutionally ambiguous, as applied to the facts of <u>Prude v. Meli</u>, #17-CV-336 (W.D. Wis.), and the rule of lenity should/must apply to my interpretation of the statutory text. Meaning, the Magistrate Crocker special designation under 636(c)(1) only applied to "any or all proceedings" that took place prior to me filing a notice of appeal[6] to the 7th Circuit in <u>Prude v. Meli</u>. The text "any or all proceedings", of 636(c)(1), must be limited to proceedings that lead up to the entry of judgment. Any other interpretation would have the "troubling result that a party before a magistrate judge would be unable to petition an Article [3] judge for review," <u>Branch v. Umphenour, 936 F. 3d 994, 1003 (9th Cir. 2019)</u>, i.e., I would not be able to appeal to the 7th Circuit Court of Appeals under such interpretation.

---

[5] See Exhibits #10-12 attached.

[6] See <u>Kusay v. U.S., 62 F. 3d 192, 194 (7th Cir. 1995)</u> ("... the notice of appeal transfers jurisdiction when filed to the court of appeals.")



(16) The filing ban, explained above at par 7 (Exhibit #6, at Issue #12), imposed upon me by Judge Peterson (in the Western District Court) was done unlawfully and without jurisdiction because after I voluntarily dismissed the case Prude v. Cooper, #24-CV-338 (W.D. Wis.) pursuant to Fed. R. Civ. P. Rule 41(a)(1)(A)(i) judge Peterson lacked jurisdictional authority to reopen the case to impose a ruling. See McCall-Bey v. Franzen, 777 F.2d 1178, 1190 (7th Cir. 1985).

(17) The other issues identified in Exhibit #6 attached are clearly pleaded with enough details at Issues #3-#11 that will allow this court to see that each issue has nonfrivolous arguable merit. I only took the opportunity to provide more detail to issues #1-#2, and #12 of Exhibit #6 attached because the issues lacked detailed therein.

<u>Continuation Pleadings Of "Remedy Award As Recompense But Otherwise Not Available In Future Suit" From Above At Par 13</u>

(18) The issues raised by me on the merits of Prude v. Meli, 76 F.4th 648 (7th Cir. 2023) and the issues I



intended to appeal (as explained <u>above at par 4-7, 14-17</u>) cannot be filed now or in a future case.

(19) The statute-limitations been expired to file any type of claim on the merits of the <u>Prude v. Meli</u> case so I loss the only opportunity to challenge the rulings listed <u>above at par 4</u> when the defendants refused me from using my "prisoner's account" (as that term "prisoner's account" is used in <u>28 U.S.C. 1915(b)(1)(A)-(B)(2)</u>)[7] to pay the $605.00 filing appellate fee, and as a result my case was dismissed as explained <u>above at par 12.</u> Moreso, I'm not able to file a state claim against the defendant Anthony Meli even if the statute-of-limitations not expired due to the fact I did not file a notice of claim under <u>Wis. Stat. 893.82(3m)</u> back in December of 2016. This prevents a state law action. <u>See Davenport v. Wollyung, 2024 WL 4903924, at 1-2 (E.D. Wis., 11-27-2024).</u> Nor is there an opportunity to refile the same claims underlying the <u>Prude v. Meli</u>[7A] case without being kicked out of court

---

[7] See <u>Spence v. McCaughtry, 46 F. Supp. 2d 861, 862 (E.D. Wis., Jan. 25, 1999).</u>

[7A] See <u>Footnote 4 above at Page 6 of 29</u>.



due to issue and/or claim preclusion.[8]

(20) Because I lost the opportunity to seek some/a particular order of relief from the 7th Circuit Court of Appeals, based on the nonfrivolous issues explained above at par 4-7, 4-17, I primarily seek the opportunity that the defendant caused me to lose, i.e., the opportunity to raise my nonfrivolous issues in order to challenge the rulings listed above at par 4 in an attempt to have each ruling in whole or in part reversed and vacated. Appealing to the Seventh Circuit Court of Appeals was my only method of seeking redress[9] of the rulings issued against me as referenced above at par 4.

(21) This remedy of recompense relief explained above at par 13(1) - (5), 18-20 cannot be brought in a future lawsuit of any type.

---

[8] See DeGuelle v. Camilli, 2012 WL 1933743, at 6-8 (E.D. Wis., May 29, 2012).

[9] See 28 U.S.C. 636(c)(3) ("...an aggrieved party may appeal directly to the appropriated United States court of appeals from the judgment of the magistrate judge in the same manner as an appeal from any other judgment of a district court.")

## Claim #2:
## Warden Stoubt Was A Bias Decisionmaker

### Statement Of Facts

(21-A) When I originally submitted my request to use my release account to pay the filing fees of <u>Prude v. Meli</u>, explained <u>above at par 9</u>, Warden Stoubt denied the request personally. See <u>Exhibit #8, Page 1</u>.

(21-B) Dissatisfied with Warden Stoubt's decision, I filed an inmate complaint to challenge the denial. Warden Stoubt involved herself in the matter being complained of by dismissing the complaint that I filed against her. See <u>Exhibit #14, Page 3 of 6</u>.

(21-C) Subsequently, I received a new court order informing me that I could ask the prison officials to use my release account without the court granting me permission to ask. See <u>Exhibit #17</u>.

(21-D) I submitted a new request (attached to the court order listed <u>above at par (21-C)</u>) seeking to use my release account and Warden Stoubt refused to even address the



matter or the merits of this new court order in relation to me using my release account by returning all my submissions back to me. See Exhibit #8, Page 4.

(21-E) The Warden (Stoubt) even acknowledged that the complaint I filed against her is a complaint that she "dismissed" "on 5/08/25 as the Reviewing Authority" on "complaint WSPF-2025-6472". See Exhibit #8, Page 4.

(21-F) In short, the defendant Warden Stoubt was substantially involved in the decision to deny my request to use my release account (see Exhibit #8, Page 1) and when I filed a inmate complaint against Stoubt's decision she, personally, dismissed it (see Exhibit #14, Page 3). Then, defendant Stoubt refused to address a new submission [9A] to use my release account.

(21-G) Defendant Stoubt deprived me of my due process right to have a unbias/neutral decisionmaker review my complaint against her. She should have recused herself from reviewing a complaint against herself. See Driftless Area Land Conservancy v. Public Service Commission of Wisconsin, 2020

---

[9A] This new submission was based on a new court order (Exhibit #17), not the same court order that Stoubt previously reviewed to deny the first request (Exhibit #13, Page 1-3)

WL 6822707, at 14 (W.D. Wis., Nov. 20, 2020)(reversed on other grounds). Also see Prude v. Meli, 76 F. 4th 648, 657 (7th Cir. 2023). Furthermore, I have a liberty interest in filing a inmate complaint created by state law. See below at par 46-B.

## Claim #3:
## Policy 309.45.02 IX. B.-C.
## (And "Attachment A" Therein)
## Is Unconstitutionally Vague
## And Ambiguous

(21-H) DAI Policy 309.45.02 ("Attachment A") is unconstitutionally vague and unconstitutionally ambiguous.

(21-I) The policy indicates that I'm allowed to use my release account to pay PLRA filing fees "which are required by State or Federal PLRA to be payable from release accounts (with notification directly from the courts)". The language "with notification directly from the courts" is unconstitutionally vague because the word "notification" is not defined. What "type" of "notification" is not defined. What the "notification" must say or "how" the "notification" must say it is not defined. The policy does not even state that the "notification" must be a "court order" which "orders" prison officials to disburse release account funds to pay the PLRA filing fee. The term "notification" is a

rule that is so overbroad because its scope is uncertain and tend to ~~produce~~ produce arbitrary consequences as it has upon me herein this case as explained <u>above at par 8-12</u>. The policy fails to provide notice/details of what "type" of "notification" is prohibited and what "type" of "notification" is permitted to trigger the use of release accounts. Such vagueness caused me to be deprived access to the court on the issues listed <u>above at par 4-21</u> and below at par <u>28-46-A</u>.

(21-J) Additionally, the term "notification" is, itself, unconstitutionally ambiguous. The term "notification" can reasonably mean what the court said in its "order" when it stated "[Prude] may ask prison officials to allow him to use funds in his release account to pay the appellate filing fee" (see <u>Exhibit #5 at Page 1</u>) and when it notified me that I "don't] need the court's permission to make such a request [to use release account]" (see <u>Exhibit #7</u>). In my view, this qualified as "notification" from the court that using my release account is/was permitted. The defendants denied my requests to use my release account without explaining why the orders I submitted did not qualify as "notification".[9A] See

---

[9A] The Western District Court of Wisconsin has said that it doesn't even have the power to "order" prison staff to disburse funds from release accounts. See <u>Exhibit #5 at Page 2.</u>

Exhibit #8 at Page 1⁹ᴮ−2.

(21-K) The defendant, Titlbach, second reason for denying me to use my release account is based on her interpretation of the policy. Ms. Titlbach stated: "2) Per policy 309.45.02, you cannot use release funds without a court order stating they can be used. Request denied.". See Exhibit #8 at Page 2. However, the vagueness of the policy does not clearly detail that it means what Titlebach claims it means. Ms. Titlbach is attaching her own definition of "notification". The policy doesn't even state that "a court order" is required or that "notification" means "a court order stating they can be used". That's the ambiguity of the policy (although Titlbach's interpretation of "notification" is not a reasonable one). Thus, the policy in question is undoubtedly unconstitutionally vague and unconstitutionally ambiguous.

⁹ᴮ The defendant, Titlbach, misunderstood the court when Titlbach stated in her denial: "1) your paperwork DENIES the use of release funds to pay the filing fee". Actually, however, the court did not deny my release account from being use and only stated it had no power to "order" prison officials to comply with their own policies. The court never issued an order denying me from paying the filing fees with my release account itself, the court merely was saying it couldn't issue such order (i.e. it lacked power to do it).

## Videoconference Request

(22) I request that all proceedings, even a jury trial, be conducted exclusively by videoconference for convenience to all parties who participate.

## Relief Sought

(23) I request that the defendants pay compensatory & punitive damages for violating my rights on the Claims #1 - #3 listed above at par 4-21-K. I further request the following relief:

(a) A declaratory judgment which declares that the release account policy 309.45.02 ("Attachment A" at bulletin point number 10 from top to bottom) is unconstitutionally vague and unconstitutionally ambiguous "as applied" to the facts of this case.

(b) A declaratory judgment which declares that the defendants did violate my rights to: (i) have an unbias decisionmaker rule on my inmate complaint against the defendant Staubt; (ii) have access to the court; and (iii) be subjected to a policy that is not unconstitutionally vague and unconstitutionally ambiguous.

(c) Regain the right to have the 7th Circuit Court of Appeals review my appeal which raise the 12 issues referenced above at par 7 and par 14-17 in order to obtain a particular order of relief, i.e. having the rulings listed above at par 4 vacated/reversed. I suffered "the loss of an opportunity to seek some particular order of relief..."[10] from the 7th Circuit Court of Appeals based on the defendant's actions explained above at par 8-12.

(d) Redress for a specific litigation that ended poorly", i.e. a chance to challenge the rulings listed above at par 4.

(e) An emergency preliminary injunction which prevents the enforcement of the court decisions listed above at par 4 (and attached). Please see motion for preliminary injunctive relief below at par 26-46. Also, see Footnote 11A below. This preliminary injunction seek to prevent enforcement of attorney fees (Exh. 2).

## Exhaustion Of Remedies

(24) I fully, and thoroughly, exhausted all available administrative remedies prior to filing this civil action. See Exhibits #14-#16, #20-#21.

---

[10] See Christopher v. Harbury, 536 U.S. 403, 414 (2002).

[11] See above at par 8-12.

[11A] I also seek any other relief... I'm entitled to under the law.



## Jury Demand

(25) I demand a jury trial.

## Preliminary Injunction

(26) The standard of review for obtaining a preliminary injunction is well established and settled. See Cassell v. Snyders, 990 F. 3d 539, 544-45 (7th Cir. 2021).

(27) Relying on most of the issues listed at Exhibit #6 attached, I'll show the likely success on most of the 11 nonfrivolous claims therein to support the requested preliminary injunction to prevent the enforcement of attorney fees court order attached at Exhibit #2.

## Likely Success On 7 Of The Claims/Issues Raised

(28) Exhibit #6 at Issue #1: The federal statute governing a magistrate judge's jurisdiction, 28 U.S.C. 636(c)(1), is unconstitutional "as applied" to the facts of Prude v. Meli, Case #17-CV-336(W.D. Wis.) in relation to the text "any or all proceedings" of 636(c)(1). Meaning each of the consent forms submitted by the parties (see

Exhibits #10 - #11 attached) applied only to "any or all proceedings" that existed prior to me filing an appeal to the 7th Circuit. These "consents" did not continue through the 7th Circuit appeal nor after remand. The statute itself supports this application. For an example, the statute expressly allows parties to consent to a magistrate judge conducting "any or all proceedings" that leads up to "the entry of judgment in the case". 28 U.S.C. 636(c)(1). It is unconstitutional, as applied to the facts of Prude v. Meli case, to extend that text "any or all proceedings" to the 7th Circuit Appeals Court and after the 7th Circuit's remand order. This would have the "troubling result that a party before a magistrate judge would be unable to petition an Article [3] judge for review. Such an arrangement would raise significant constitutional difficulties, as it would appear to lack the requisite supervision by an Article [3] officer." See Branch v. Umphenour, 936 F.3d 994, 1003 (9th Cir. 2019). To repeat, the consents (see Exhibits #10 - #11), which waived having an Article 3 judge preside over the case, do not continue to be a waiver after the 7th Circuit's remand order.

(29) In fact, thorough research reveals that even the 7th Circuit Appeals Court has ruled, expressly, that a waiver invoked in relation to a proceeding that took place before an appeal does not bind those parties to that same waiver after remand. See Burnham v. North Chicago St. Ry. Co., 88 F. 627, 629-30 (7th Cir. 1898); also see U.S. v. Lee,

539 F. 2d 606, 608-09 (6th Cir. 1976) (citing Burnham and holding that a "consent" to a "magistrate" judge does not bind parties to continue that "consent" after an appellate court remands for trial). After the 7th Circuit remanded my case in Prude v. Meli, 76 F. 4th 648 (7th Cir. 2023) back to the district court the old "consents" (i.e. Exhibit #10-#11 attached) did not bind me to continue to waive my right to an Article 3 judge. U.S. v. Lee, 539 F. 2d at 608-09.

(30) Exhibit #6 at Issue #4: I did not imply that I "re-consented to magistrate judge jurisdiction on remand by not objecting" as the Magistrate judge Crocker ruled. See Prude v. Meli, 2025 WL 371475, at 2 (W.D. Wis., February 3, 2025). At no point after remand was I ever informed that I had an option to "re-consent" to a magistrate or choose an Article 3 judge. My failure to object did not somehow transform into a "implied consent" because the "implied consent" rule only applies when a party is given "notice of the right to refuse" a magistrate's jurisdiction and does not object. See Stevo v. Frasor, 662 F.3d 880, 883 (7th Cir. 2011) and Roell v. Withrow, 538 U.S. 580, 587 n.5 (2003) ("notification of the right to refuse the magistrate judge is a prerequisite to any inference of consent").

(31) Importantly, the parties consents (i.e. Exhibits #10-#11 attached) and the Article 3 judge's referral order (i.e.

Exhibit #12 attached) only permits a magistrate conduct all proceedings that leads up to ordering the entry of judgment. These consents, and the referral order, was not consenting to being bound to these Article 3 judge-waivers beyond "the entry of judgment", through the 7th Circuit Appeals Court or after remand. Thus, the magistrate erred in holding that I "impliedly re-consented" seeing I was never given "notice of the right to refuse." See Stevo v. Frasor, 662 F.3d 880, 883 (7th Cir. 2011).

(32) Exhibit #6 at Issue #3: The defendants in Prude v. Meli, requested that the magistrate judge hand the case over to "Chief Judge Peterson" (i.e. vacate the referral order at Exhibit #12 attached) in order to allow Peterson to impose "a litigation bar". However, the magistrate denied the request because it believed it "unnecessarily prolongs and complicates a case that is already closed." See Prude v. Meli, 2024 WL 5455759, at 1 (W.D. Wis. September 20, 2024). However, a magistrate judge does not have the authority nor the jurisdiction to vacate an Article 3 judges referral order. See 28 U.S.C. 636(c)(4); also see Branch v. Umphenour, 936 F.3d 994, 1002-03 (9th Cir. 2019) and Brown v. Peters, 940 F.3d 932, 936 (7th Cir. 2019)(citing Branch v. Umphenour). Thus, the magistrate judge lacked power and jurisdiction to "rule" on a request by a party to hand the case back to an Article 3 judge.



(33) <u>Exhibit #6 at Issue #6:</u> The magistrate judge committed error in ~~its~~ its decision when it ruled the defendants motion for sanctions was not waived/forfeit/untimely. This ruling violated <u>Sullivan v. Hunt, 350 F. 3d 664, 666 (7th Cir. 2003)</u> & <u>Kaplan v. Zenner, 956 F. 2d 149, 151 (7th Cir. 1992).</u>

(34) The 7th Circuit established a bright-line rule that requires a party to bring a motion for sanctions no later than "90 days from the date of entry of final judgment" and that 90 days represents "the outer parameters of the timeliness for sanctions claims." See <u>Sullivan v. Hunt, 350 F. 3d 664, 666 (7th Cir. 2003).</u> The defendants in <u>Prude v. Meli</u> were, in fact, aware of the basis (and had possession of the evidence to support that basis) to support their motion for sanctions since <u>year 2016-2021 (May)</u>, which is 90 days after the entry of final Judgment. See <u>Prude v. Meli, 2021 WL 1315243 (W.D. Wis., February 9, 2021).</u> To support my argument that the defendants were aware of the evidence to support their motion for sanctions between <u>2016-2021</u> but didn't file the motion until <u>year 2024,</u> see "Plaintiff Terrance Prude's Response To Defendants Sanctions Motion..." from <u>Prude v. Meli, #17-CV-336 (W.D. Wis.),</u> at <u>Dkt. #254</u> (attached marked Exhibit #18, at Page 14-22). I hereby adopt those arguments pursuant to <u>FRCP, Rule 10(c)</u> to avoid redundancy.

(35) Nothing can justify bringing a motion for sanctions beyond the 90 day bright-line rule for alleged misconduct that allegedly took place prior to the entry of final judgment. Bright-line rules have no exceptions and nor has the 7th Circuit made an exception to its 90 day bright-line rule. In fact, the defendant Hunt, in Sullivan v. Hunt, was only two-days (at minimum) and one-hundred-ninety-eight-days (at most) beyond the 90 day bright-line rule but the Court refused to allow Hunt's untimely motion to be excused. Sullivan v. Hunt, Id. at 666. In Prude v. Meli, the defendants filed their motion for sanctions nearly 3½ years after the entry of final judgment for alleged misconduct that happened prior to the entry of final judgment. Again, the final judgment was entered on February 9, 2021. See Prude v. Meli, 2021 WL 1315243. (W.D. Wis.).

(36) Exhibit #6 at Issue #9: I filed a Rule 59(e) and a Rule 60(b)(4) motion combined into one brief in Prude v. Meli. See Exhibit #19 attached.[12] The magistrate denied my Rule 59(e) motion, erroneously, without a single reason for why it was being denied. See Prude v. Meli, 2025 WL

---

[12] See Prude v. Meli, #17-CV-336(W.D. Wis.), Dkt. #290 where Pages 1-25 governed the 60(b)(4) motion and Page 26-31 governed the 59(e) motion.

371475 (W.D. Wis. February 3, 2025). The merits, and the arguments, for the 60(b)(4) relief was totally different from the merits/arguments for the 59(e) relief sought. The 59(e) motion challenged why the decision to grant defendants motion for attorney fees was in error. See Footnote 12 above. The magistrate judge ruled: "It is ORDERED that plaintiff's motion to vacate all Magistrate Judge Crocker's rulings pursuant to Fed. R. Civ. P. Rule 60(b)(4) & 59(e), dkt. 290, is DENIED.". See Prude v. Meli, 2025 WL 371475, 2 (W.D. Wis. February 3, 2025). The 7th Circuit has expressly held that "a district court abuses its discretion when it denies [a motion] with no explanation". See LaSalle Nat. Bank of Chicago v. County of DuPage, 10 F. 3d 1333, 1338 (7th Cir. 1993).

(37) Exhibit #6 at Issue #12: The district court judge Peterson abuse his authority and exceeded his jurisdiction when he: (1) imposed a litigation bar against me based on magistrate judge Crocker's factual findings of Prude v. Meli, 2024 WL 3858836 (W.D. Wis., August 19, 2024) despite not being the presiding judge of the Prude v. Meli case; (2) imposed the litigation bar against me from a unrelated case that he had no jurisdictional power to make rulings on from; and (3) used Prude v. Cooper, 2024 WL 4582357 (W.D. Wis, October 25, 2024) as a means of circumventing the legal requirement to



Vacate the magistrate judge referral order (i.e. see <u>Exhibit #12 attached</u>), pursuant to <u>28 U.S.C. 636(c)(4)</u> in order to impose the litigation bar.

(38) In sum, once I voluntarily dismissed <u>Prude v. Cooper, 24-CV-338-jdp</u>(W.D. Wis.), pursuant to <u>Fed. R. Civ. P. Rule 41(a)(1)(A)(i)</u>, it divested the court/judge of jurisdiction to perform any rulings. <u>See Marques v. Federal Reserve Bank of Chicago, 286 F.3d 1014, 1018 (7th Cir. 2002)</u> ("There is, however, considerable and unchallenged case authority (including decisions by this court) that a judgment on the merits that is entered after the plaintiff has filed a proper Rule 41(a)(1) notice of dismissal is indeed void."). The actions of district judge Peterson was worst than a judge who makes a judgment on the merits after a plaintiff dismisses his own case under <u>Rule 41(a)(1)(A)(i)</u>: District judge Peterson issued a ruling after I dismissed the case pursuant to <u>Rule 41(a)(1)(A)(i)</u>, not on the merits of <u>Prude v. Cooper</u> but instead on the merits of <u>Prude v. Meli</u>, which was presided over by magistrate judge Crocker. Peterson lacked jurisdiction doubly when he issued a ruling in <u>Prude v. Cooper</u> that applied to <u>Prude v. Meli</u>. This was judicially radical and unprecedented. Thus, the litigation bar was imposed against me by judge Peterson without the jurisdiction to do so.

(39) All these claims [13], listed above at par 28-38, do in fact demonstrate "some likelihood of succeeding on the merits."[13A] <u>Cassell v. Snyders, 990 F.3d 539, 544-45 (7th Cir. 2021)</u>.


## Prude Has No Adequate Remedy At Law And Will Suffer Harm Irreparably


(40) <u>No Adequate Remedy At Law</u>: The court's order which granted the defendants attorney fees, <u>Prude v. Meli</u> (Exhibit #2 attached), is due to go into effect due to the defendants (in this case herein) depriving me from accessing the 7th Circuit Appeals Court via using my release account. This deprivation caused my case to be dismissed. See <u>Exhibit #9 attached.</u> The defendants from <u>Prude v. Meli</u> will now seek to enforce the court order for attorney fees by placing a lien and/or a notice of restitution against my prisoner's account by freezing all my income to reimburse for the attorney fees. The only remedy I did have was to appeal the attorney fees rulings to the 7th Circuit which would have put on hold

---

13 I no longer desire to litigate <u>Issue #10</u> mentioned in Exhibit #6 attached.

13A Also, see <u>par 46-A</u> below in support of the "likely success" on my bias decisionmaker claim against Stoubt.

the enforcement of such an order until the 7th Circuit ruled on the merits of my challenges to it. The defendants herein this case stripped me of my right to access the 7th Circuit which is a textbook showing that I have no other adequate remedy at law to challenge the attorney fees order before it could be enforced. The fact that the merits of my claim herein establishes the likelihood of success should prevent the defendants in <u>Prude v. Meli</u> from benefitting from the actions of the current defendants by attempting to collect those fees while this case about those same fees is pending. In effect, this access to the court claim is my only remedy to effectively obtain a form of a "stay pending appeal" of the attorney fees. A "stay pending appeal" is analogous to a preliminary injunction. See <u>Roland Machinery Co. v. Dresser Industries, Inc.</u>, 749 F.2d 380, 387 (7th Cir. 1984)(citing <u>Washington Metropolitan Area Transit Comm'n v. Holiday Tours, Inc.</u>, 559 F.2d 841, 842 n. 1, 842-44 (D.C. Cir. 1977)).

(41) <u>Irreparable Harm</u>: I will be insolvent and lose my ability to take care of myself by buying hygiene, food and my ability to litigate this case will be suppressed by the current defendants freezing my account with the goal of handing the funds over to the defendants of <u>Prude v. Meli</u>. How such an action to freeze my ▪ account will harm my ability to prosecute this case cannot be calculated. This threat is great. There's no telling how long this case will be in court especially seeing

Prude v. Meli's case been in court since May of 2017. This case is not immune from the same length of time. To permit the defendants of Prude v. Meli to direct the defendants of this case to collect fees from my assets and prisoner's account, derived from an unlawful court order, would be merely another method/design to hinder my access to this very court on my access to court claim. This would be irreparable harm. See S & S Sales Corp. v. Marvin Lumbar & Cedar Co., 435 F. Supp. 2d 879, 883 (E.D. Wis., June 20, 2006).

### The Defendants Will Not Suffer Any Harm (i.e. Repairable or Irreparable) If Preliminary Relief Is Granted

(42) Had I been able to appeal to the 7th Circuit the defendants would have had to wait for the 7th Circuit to rule on the merits of the basis to appeal the Prude v. Meli case. Seeing the attorney fees order (see Exhibit #2) was not enforced when I filed the notice of appeal in Prude v. Meli, it would not have been enforceable until after the 7th Circuit ruled on the merits of the appeal. The requested injunction in this case would put the defendants in Prude v. Meli in the same position they would have been in had the defendants in this current case not blocked me

from paying the $605.00 filing fee, i.e. the defendants in <u>Prude v.</u> <u>Meli</u> would have to wait ~~too~~ for the 7th Circuit to rule on whether the attorney-fees-court-order was, itself, unlawful under the merits indicated <u>above at par 28-39</u>.

(43) The harm I ~~would~~ would suffer from the freezing of my assets/prisoner's account, will, also, mirror the same methods that deprived me access to the 7th Circuit Court in the <u>Prude</u> <u>v. Meli</u> case. If the injunction does not issue the defendants will benefit from the attorney fees court order (and I'll be harmed irreparably by it). ~~The~~ The merits for vacating the attorney fees court order (explained <u>above at par 7,28-39</u>) establishes why the order is, itself, illegal and should not be allowed to become operational. Not issuing the injunction will ~~adversely~~ ~~~~ affect my access to this case in relation to me prosecuting it. The law is clear that I'm entitled to be relieved of each of the court orders (i.e. <u>Exhibits #1 - #4 attached</u> <u>and Prude v. Meli, 2024 WL 3858836 (W.D. Wis. August 19,</u> <u>2024)</u>) and the defendants ~~~~ would reap the ill-gotten gains of the court orders. There's questionable statements made by the defendants, in this case, that <u>reasonably imply</u> that depriving me access to my release account to pay the appellate filing fees in <u>Prude v. Meli</u> was for the purpose of enforcing the attorney fees court orders. In particular, a correctional officer came to my cell to bring me Warden Stoudt memo (see <u>Exhibit #8, Page 4</u>) and indicated to me that "they wanted you to know that you won't

be able to use your release account to contest the attorney fees the court ordered you to pay." The fact the Warden even knew what "type" of judgment I wanted to use my release account to challenge made me "believe" ■ Warden [14] Stoudt was conspiring with the defendants of <u>Prude v. Meli</u> (and their attorneys) to prevent me from challenging the attorney fees rulings of <u>Prude v. Meli</u>.

(44) Issuing the injunction won't harm the defendants, and I cannot even think of a reasonable circumstance that would possibly show how defendants would be injured in this case, or in <u>Prude v. Meli</u>.

The Public Interest Of Granting
Or Denying The Injunction And
<u>Its Consequences To Non-Parties</u>

(45) The public interest does not weigh against granting the preliminary injunction. The non-parties (i.e. the defendants in

---

[14] Warden Gary Boughton was a defendant, for injunctive relief purposes, in <u>Prude v. Meli</u> and has since retired this year (2025) from <u>WSPF</u>. The new Warden of this prison now is the defendant Paula Stoudt. This leads me to believe the decision to deny me from using my release account was done with malice.

<u>Prude v. Meli</u>[15], and members of the public, face no serious concerns. In fact, the public interest would benefit from a injunctive order for the following reasons: (1) forcing me to pay a fee of $32,471 ▓▓ that was unlawfully imposed would send a toxic message to the public that a government official can obtain an unlawful fee award, and then prevent the person from appealing the judgment in order to collect the unlawful fees; and (2) Enforcing a constitutional right to contest unlawful rulings is in the interest of the public. Meaning, the public would lose faith in the judicial system if a party is blocked from being able to use their own personal funds to challenge a disfavorable ruling where that "block" was instituted by parties who collectively benefit from the unlawful court orders. The public certainly benefits from the enforcement of lawful court orders, not unlawful court orders (i.e. Exhibit #1-#4 and <u>Prude v. Meli, 2024 WL 3858836 (W.D. Wis., August 19, 2024)</u>).

(46) Based on these arguments in support of my request for preliminary injunction, this court should grant the injunctive relief.

---

[15] Case number <u>17-CV-336</u> in the United States District Court for the Western District of Wisconsin.



## Likely Success On The Bias Decisionmaker Claim Against Defendant Stoubt

(46-A) The law is clear that when a prison official is personally and substantially involved in a underlying incident that the prison official is prohibited from presiding over the proceeding as a decisionmaker. See Prude v. Meli, 76 F. 4th 648, 657 (7th Cir. 2023). The defendant Stoubt was a textbook-bias-decisionmaker when she performed the act of denying my request to use my release account (see Exhibit #8, Page 1) and when I filed a inmate complaint to challenge her action the defendant Stoubt involved herself in the process by dismissing my complaint against her actions (see Exhibit #14, Page 3). It is this second act (i.e. involving herself in the inmate complaint review system by dismissing my complaint filed against her) that caused my rights to have an unbias decisionmaker to be violated. Due process required me to have someone other than Stoubt to decide the merits of my complaint against Stoubt. See above at par 21-A through 21-G. Success on this claim is more than "likely", it's nearly certain. The record supports the success on this claim.

## Prude Has A Liberty & Property Interest In Having A Unbias Decisionmaker In The Inmate Complaint Review System

(46-B) A state statute creates a "liberty interest" when "the regulations contain 'explicit mandatory language,' i.e., specific directives to the decisionmaker that if the regulations substantive predicates are present, a particular outcome must follow." See Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, at 463 (1989). Wisconsin Statute ("Wis. Stat.") administrative code DOC 310.07 sets forth "substantive predicates" that an inmate must meet in order to be entitled to use the inmate complaint review system ("ICRS") and if the "substantive predicates" are met then a particular outcome must follow, i.e. use of the ICRS. DOC 310.07(3)(a)-(f) sets forth six criteria an inmate must meet in order to be entitled to use such system, which are: (1) Be submitted on a complaint form provided by the department; (2) Be legibly handwritten or typed; (3) Be filed only under the name by which the inmate was committed to the department or the legal name granted by a court; (4) Include the inmate's original signature; (5) Not exceed 500 words total and not exceed two pages; (6) Provide relevant supporting documentation, which may be accepted at the discretion of the ICE. Id. If I meet these criteria then the ICRS has no choice but to grant me access to such

system to file my complaint.[16] Because of this,[17] I'm entitled to be afforded due process protections, i.e. a review of my complaint by "an impartial decisionmaker". See generally Prude v. Meli, 76 F.4th 648, 657 (7th Cir. 2023). Also, I have a "property interest" ~~[illegible]~~ in my "prison account" in & of itself. See Campbell v. Miller, 787 F.2d 217, 222 (7th Cir. 1986).

## Conclusion

(47) I request to be allowed to proceed on the following claims: (1) Backward Looking Access To Court claim which raise 11 nonfrivolous claims/issues at Issues #1-#9, #11-#12 attached at Exhibit #6 cited above at par 6-7, 14-17, 28-39; (2) Due Process Bias Decisionmaker claim cited above at par 21-A — 21-G, 46-A — 46-B; and (3) Policy 309.45.02 ("Attachment A") is unconstitutionally vague and ambiguous as explained above at par 21-H — 21-K.

(48) I request this court grant the preliminary injunction on the grounds listed above at par 26 — 46-A.

Terrance Prude/*Terrance Prude*/Date: 7/21/2025

---

[16] See generally Casteel v. McCaughtry, 176 Wis. 2d 571, 579-80 (Wis. S.Ct. 1993) (establishing "how" state regulations create a due process liberty interest under the U.S. Constitution's Fourteenth Amendment).

[17] 310.07(1)-(2) are "substantive predicates" as well,