# Exhibit Section

- Attached Exhibits #1 - #21
- Total Pages Attached: 115

# Exhibit #1

- 3-Pages (Double Sided)



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE PRUDE,

                Plaintiff,

    v.

ANTHONY MELI, *et al.*,

                Defendants.

ORDER

17-cv-336-slc

---

On August 19, 2024, this court entered an order (dkt. 260) ruling on the parties' dueling motions for sanctions, dkts. 204 and 225. I granted Prude's motion in part by ordering the State to provide notice to the Nistler Law Office regarding what the court found to be the incorrect disposition of the law firm's $10,000 check, and I granted the defendants' motion by dismissing Prude's lawsuit and entering judgment against him. Dkt. 260 at 32.

On September 16, 2024, defendants filed a motion to alter or amend the judgment (dkt. 264) followed with a supplement on September 18, 2024 (dkt.265). There is no need for Prude to respond to this motion. First, to the extent that defendants are asking the court to increase its sanctions against Prude for his fraud upon the court, I am declining to extend the life of this case at the district level in this fashion. I am not going to change my ruling on strikes. Prude certainly deserves a litigation bar, but "recommending" to Chief Judge Peterson that he impose such a bar unnecessarily prolongs and complicates a case that is already closed. Prude's lawsuits in this court currently are being assigned to Chief Judge Peterson. *See, e.g., Prude v. Cooper*, 24-cv-338-jdp. The AGO is free to seek a litigation bar from the chief judge in that case, citing to the August 19, 2024 order in this case.

Second, because the court dismissed the instant lawsuit with prejudice as a sanction for Prude's fraud upon the court, he no longer has any claim to the $10,000 in any venue on any ground. As a result, the only entity that could possibly claim the $10,000 check is the Nistler Law Office. Prude is not entitled to provide input on whether or how the court should clarify or amend its order on this point.

That said, my review of the case file convinces me that defendants are entitled to clarification of the court's order.

[Exhibit #1]

ORDER

It is ORDERED that:

(1) Defendants' Motion to Alter or Amend the Judgment is DENIED; and

(2) Defendants' alternative request that the court clarify its ruling on Prude's motion for sanctions is GRANTED in this fashion:

(A) The court RESCINDS its finding that it was incorrect BOP to seize the $10,000 check.

(B) This court's now-rescinded factual finding on the propriety of the State's disposition of the check had been made solely for the purpose of ordering the State to give the Nistler Law Office the opportunity to seek return of this money if the law firm wished to do so. *See* dkt. 260 at 12, n.6; *see also id.* at 11.

(C) The court RESCINDS its August 19, 2024 order that the Wisconsin Attorney General's Office notify the Nistler Law Office, S.C. that the Waupun Correctional Institution should have returned the law firms' 12/2/2016 check.

(D) Prude has no claim whatsoever to the $10,000 seized from Nistler Law Office, S.C.. Prude cannot have this money. *See* dkt. 260 at 11; *see also id.* at 12 ("Prude's misconduct forecloses any other type of relief from this court.") Prude's request that DOC "unseize" this money is contrary to this court's August 19, 2024 order.

Entered this 20th day of September, 2024.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

# Exhibit #2

- 5-Pages (Double Sided)

DKt.#288

[Exhibit#2]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

Plaintiff,

v.

ANTHONY MELI, *et al.*,

Defendants.

ORDER

17-cv-336-slc

In an August 19, 2024, order, this court granted in part defendants' motion for sanctions against plaintiff after finding that plaintiff had fabricated multiple documents that he then relied upon in pursuing this lawsuit. Dkt. 260. I dismissed this case with prejudice as a sanction for plaintiff's fraud upon the court. Defendants now move to recover attorneys' fees for the time spent defending against plaintiff's fraudulent claims. Dkt. 275. Plaintiff objects to this motion as untimely. As discussed below, I find that defendants' claim is timely and their fee request is reasonable, Therefore, I am granting defendants' motion and awarding $32,471 in attorney fees.

Defendants based their fee request on Federal Rule of Civil Procedure 54(d). Although prevailing parties in civil lawsuits traditionally are not awarded attorneys' fees, *see Alyeska Pipeline Service Company v. Wilderness Society*, 421 U.S. 240, 247 (1975), Rule 54(d) allows them to move for fees within "14 days after the entry of judgment." To prevail, the moving party must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award" and "state the amount sought or provide a fair estimate of it." Fed. R. Civ. P. 54(d)(2).

Defendants request $32,471 as recompense for the time spent by the four Assistant Attorneys General (AAGs) primarily responsible for working this case since it was filed seven years ago. Although AAGs do not typically keep contemporaneous time or billing records and did not do so here, the court may rely on their retrospective estimate of their hours worked if sufficiently detailed.

[Exhibit#2]

*See, e.g.*. *Vander Pas v. Bd. of Regents of the University of Wisconsin System*, 2023 WL 4053132, at *3 (E.D. Wis. June 16, 2023) (noting that the "lack of contemporaneous time records does not mean that Defendant should recover nothing").

Defendants have submitted declarations from each of the four AAGs, and their declarations are sufficiently detailed for the court to determine that the stated hours are not excessive. All told, the AAGs claim 170.9 hours at $190 an hour (which is the hourly rate the Attorney General's Office charges to state agencies) for nearly seven years of legal work including an appeal and a remand. Defendants report that they have excluded time related to discovery, conferral with opposing counsel, and witness preparation, among other litigation tasks, and they also have excluded paralegal and administrative time, all in an effort to avoid the need for fat trimming and to give plaintiff "the benefit of the doubt." Dkt. 275 at 6.

The total hours claimed are sufficiently verifiable because they primarily include time spent on activities documented in the record: researching and drafting briefs and preparing and filing exhibits in both this court and the Court of Appeals for the Seventh Circuit, as well as court appearances and depositions and related travel. Plaintiff does not dispute the amount of claimed hours or the hourly rate. Having independently reviewed defendants' claim, I see no reason to reduce it.

Defendants argue two legal grounds for their fee request, and both are valid for the same reasons. First, defendants point to statutory authority allowing "a reasonable attorney's fee as part of the costs" of the prevailing party in a civil rights case brought under 42 U.S.C. § 1983 like this one. 42 U.S.C. § 1988(b). Defendants must show that plaintiff's lawsuit is "meritless in the sense that it is groundless or without foundation." *Munson v. Milwaukee Bd. of School Directors*, 969 F.2d

[Exhibit#2]

266, 269 (7th Cir. 1992). Second, a court has the inherent authority to award fees in response to a party's "bad-faith conduct." *Chambers v. NASCO, Inc.*, 501 US 32, 50-51 (1991).

I dismissed this lawsuit with prejudice as a sanction against plaintiff, so there can be no dispute that defendants have prevailed. Nor can there be any dispute that plaintiff acted in bad faith by bringing this unfounded lawsuit based on fabricated documents that he attached to his complaint under penalty of perjury, and by persisting in litigating this case even after his pro bono counsel withdrew upon discovering their client's misconduct. Plaintiff does not argue against either of these conclusions.

Rather, plaintiff objects to defendants' motion as untimely: plaintiff notes that Rule 54(d) allows a moving party only 14 days after judgment to bring a motion for attorneys' fees. Here defendants brought their motion 45 days after the court entered judgment dismissing this case with prejudice. *See* dkts. 261 & 275. Defendants counter that their fee motion is timely because it was filed 14 days after the court's September 20, 2024 order denying their timely motion to alter or amend judgment under Rule 59(e), which they maintain "tolled the deadline to move for fees until 14 days after the Court decided the motion."[1] *See* dkts. 264, 275 & 286 at 4. Plaintiff argues in reply that defendants' Rule 59(e) motion could not have tolled their deadline to move for fees because that deadline expired on September 3, 2024, or 14 days after the court entered judgment on August 20, 2024, and defendant did not move for relief under Rule 59(e) until September 16, 2024. Dkt. 264. In short, the parties dispute when to start the 14-day clock.

---

[1] A motion under Rule 59(e) "must be filed no later than 28 days after the entry of judgment," so defendants' Rule 59(e) motion was timely filed 27 days after the court entered judgment dismissing this case. *See* dkts. 261 & 264.

[Exhibit#2]

Defendants have the better of the argument. The plain language of Rule 54(d)(2)(B) states that a motion for attorneys' fees must "be filed no later than 14 days after the entry of judgment," which the rule defines as "a decree and any order from which an appeal lies." Fed. R. Civ. P. 54(a).

[So here's the question: does it matters that defendants' 14-day window to request fees after I dismissed this case had already closed when they sought relief under Rule 59(e)? I conclude that it does not: defendants' timely Rule 59(e) motion suspended the finality of the court's judgment so that it was no longer appealable until I ruled on the post-judgment motion. Fed. R. App. P. (A)(4)(A)(v); *see also Borrero v. City of Chi.*, 456 F.3d 698, 699-700 (7th Cir. 2006) (a Rule 59(e) motion tolls the time for filing an appeal from the judgment and is not appealable separately from the judgment that it seeks to change). Defendants' Rule 59(e) motion suspended the finality of the August 2024 judgment, so that defendants were not required to file a motion for attorney's fees before resolution of their Rule 59(e) motion because until the court ruled on that motion, the underlying judgment was not "an order from which an appeal lies."]

Defendants' fee motion therefore was timely because they filed it no later than 14 days after my denial of their Rule 59(e) motion. *E.g.*, *Bailey v. County of Riverside*, 414 F.3d 1023, 1025 (9th Cir. 2005) (a Rule 54(d) motion for fees is timely "if filed no later than 14 days after the resolution of a Rule 50(b), Rule 52(b), or Rule 59 motion"); *Miltimore Sales, Inc. v. International Rectifier, Inc.*, 412 F.3d 685, 687-689 (6th Cir. 2005) (same); *Weyant v. Okst*, 198 F.3d 311, 315 (2nd Cir. 1999)(same); *Quigley v. Rosenthal*, 427 F.3d 1232, 1237 (10th Cir. 2005) (the amended final judgment entered "triggered the running of a new fourteen-day period" to file a renewed motion for costs and fees); *see also Radtke v. Caschetta*, 822 F.3d 571, 573-74 (D.C. Cir. 2016) (following *Bailey* and noting the Second, Sixth, Tenth, and Eleventh Circuits have adopted the same tolling principle); *Slep-Tone*

[Exhibit#2]

*Entertainment Corp. v. Karaoke Kandy Store, Inc.*, 782 F.3d 313, 316-17 (6th Cir. 2015) (applying the same tolling principle in the context of Rule 52); *Members First Fed. Credit Union v. Members First Credit Union of Florida*, 244 F.3d 806, 807 (11th Cir. 2001) (Rule 59 motion postponed the finality of the judgment so the attorney's fee application filed within the time limit permitted under local rules was timely).

Because defendants' motion for attorneys' fees is timely and reasonable, I will grant it.

ORDER

It is ORDERED that:

(1) Plaintiff's motion for leave to file a surreply, dkt. 287, is GRANTED;

(2) Defendants' motion for attorneys' fees, dkt. 275, is GRANTED, and plaintiff shall pay defendants' counsel $32,471 in attorneys' fees; and

(3) The parties shall bear their own costs in litigating the instant motion.

Entered this 21st day of November, 2024.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

# Exhibit #3

- 4-Pages (Single Sided)

[Exhibit #3]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE PRUDE,

Plaintiff, ORDER

v. 17-cv-336-slc

ANTHONY MELI, *et al.*,

Defendants.

---

Plaintiff Terrance Prude has filed a motion to vacate all of my orders entered since this case was remanded from the Court of Appeals for the Seventh Circuit in August 2023. Dkt. 290. Since then, the parties litigated dueling motions for sanctions, dkts. 204 and 225, requiring an evidentiary hearing, dkt. 232. After that hearing, I concluded that Prude had committed fraud upon the court by having submitted under penalty of perjury fabricated documents, I dismissed this lawsuit with prejudice, dkt. 260, and I awarded attorneys' fees to defense counsel over plaintiff's opposition, dkt. 288. In support of his motion, Prude argues that I had no authority to enter any orders in this case following remand because the parties did not re-consent to my jurisdiction. I am denying Prude's motion to vacate.

First, Prude has not established that I was without jurisdiction following remand from the Seventh Circuit. The relevant statutory provision provides that a magistrate judge, once consented to by the parties, has jurisdiction over "any or all proceedings" in a case. 28 U.S.C. § 636(c)(1). Prude argues that this jurisdiction terminates once a litigant files a notice of appeal, but I agree with those district courts that have concluded that "any or all proceedings" includes a remand following appeal unless the parties have successfully withdrawn their consent. *E.g.*, *GameTech Int'l, Inc. V. Trend Gaming Sys.*, No. cv-01-540-phx-loa, 2008 WL 4571424, at *9-10 (D. Ariz. Oct. 14, 2008) (holding that "any or all proceedings" "contemplates the magistrate judge conducting every aspect of

[Exhibit #3]

litigation, including a remand following an appeal"). On remand, the Seventh Circuit could have–but did not–order reassignment of this case to a different judge, and the parties never moved to withdraw their consent.

Prude relies on authorities that are distinguishable. For example, in *Lopez v. Holder*, 563 F.3d 107 (5th Cir. 2009), the petitioners consented to a magistrate judge's jurisdiction over a habeas proceeding that was converted to a petition for review on appeal in response to legislative changes and transferred to the district court for a new hearing. *Id.* at 111. The court held that a new consent and referral order was required because the transferred proceeding was *new and distinct* from the habeas proceeding. *Id.* Here, the proceeding was same on remand. And in *King v. Ionization International, Inc.*, 825 F.2d 1180, 1185 (7th Cir. 1987), the Seventh Circuit confronted the circumstance where a magistrate judge handled post-judgment collections without consent until appeal, and held that the parties consented through their conduct and that post-judgment litigation falls within a magistrate judge's jurisdiction. These holdings do not help Prude in this case, where the parties consented and continued litigating without objection after remand.

Finally, *Parks v. Collins*, 761 F.2d 1101 (5th Cir. 1985), is also distinct. In that case, a magistrate judge tried a case with the parties' consent, then granted a motion for relief from a default judgment entered by the district court judge as part of a related garnishment action without consent and referral. *Id.* at 1104. The Fifth Circuit held that the magistrate judge did not have the authority to set aside the default judgment because there was no referral order and because there was no indication that the parties to the garnishment action had consented to have a magistrate judge rule on that motion. *Id.* at 1106. As already noted, in this case the parties gave consent and the proceeding at issue has remained the same. Prude cites no authority for the proposition that any reversal and remand necessarily requires the parties to re-consent.



Second, Prude impliedly re-consented to magistrate judge jurisdiction on remand by not objecting. The United States Supreme Court has held that consent to proceedings before a magistrate judge can be inferred from a party's conduct during litigation. *Roell v. Withrow*, 538 U.S. 580, 582 (2003). In *Roell*, a case proceeding in front of a magistrate judge all the way to a jury verdict and judgment without a formal letter of consent from two parties until after the case had been remanded by the Court of Appeals for the Fifth Circuit. *Id.* at 583. The Supreme Court found "surely correct" the magistrate judge's conclusion that these parties had implied their consent to the jurisdiction of a magistrate by their voluntary participation in the entire course of proceedings without objection. *Id.* at 584. The Court explained that implied consent could be found to "check[] the risk of gamesmanship" where "the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the Magistrate Judge." *Id.* at 590. After *Roell*, the Court of Appeals for the Seventh Circuit has emphasized that "litigants who have knowingly proceeded without objection" through substantial litigation before a magistrate judge "are deemed to have impliedly consented to" magistrate judge jurisdiction. *Stevo v. Frasor*, 662 F.3d 880, 884 (7th Cir. 2011).

Prude was aware of the consent requirement, having consented to magistrate judge jurisdiction over this case once before. Dkt. 23. Prude then litigated this case before me without objection during the subsequent 16 months after its remand. Even if I were to assume, *arguendo*, that Prude's notice of appeal had terminated magistrate jurisdiction, thereafter he implicitly re-consented to such jurisdiction on remand based on his conduct.



ORDER

It is ORDERED that plaintiff's motion to vacate all Magistrate Judge Crocker's rulings pursuant to Fed. R. Civ. P Rule 60(b)(4) & 59(e), dkt. 290, is DENIED.

Entered this 3rd day of February, 2025.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

Exhibit #4

- 3-Pages (Double Sided)

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

[Exhibit #4]

Plaintiff,

v.

OPINION and ORDER

24-cv-338-jdp

SARAH COOPER,

Defendant.

Terrance Prude, proceeding without counsel, is incarcerated at Wisconsin Secure Program Facility. Prude filed this lawsuit alleging that prison staff confiscated a check for $10,000 sent to him by a lawyer and deposited those funds into the state general fund. His allegations relate to those he brought in another case in this court; Magistrate Judge Stephen Crocker recently dismissed that case because of Prude's misconduct, finding that Prude fraudulently altered prison documents that he attempted to use as evidence in that case and then fabricated backdated correspondence to conceal his forgeries. *Prude v. Meli*, No. 17-cv-336-slc, 2024 WL 3858836, at *1 (W.D. Wis. Aug. 19, 2024). Following dismissal of the '336 case, Prude voluntarily dismissed this case. But I must still address Prude's misconduct in this court.

Dismissal of the '336 case was about as serious of a sanction as Magistrate Judge Crocker had the authority to issue in a case that the parties have consented him to hear. He noted that a litigation bar would be appropriate but that he lacked the power to issue one. *Id.* at *13. As a district judge, I have additional authority "to preserve the integrity of [this court's] proceedings." *Secrease v. W. & S. Life Ins. Co.*, 800 F.3d 397, 401 (7th Cir. 2015) ("A district court has inherent power to sanction a party who 'has willfully abused the judicial process or

[Exhibit#4]

otherwise conducted litigation in bad faith.'" (quoting *Salmeron v. Enterprise Recovery Systems, Inc.*, 579 F.3d 787, 793 (7th Cir. 2009))). Magistrate Judge Crocker lays out in detail the egregious nature of Prude's misconduct; I incorporate his findings into this order.

Prude's misconduct both in fabricating evidence and in attempting to conceal those fabrications with additional forged evidence drained the resources of the court, the Wisconsin Department of Justice, and the Department of Corrections. I agree with Magistrate Judge Crocker that Prude's misconduct requires a greater sanction than dismissal of the '336 case.

When necessary, federal courts have the power to impose a filing bar to restrict a plaintiff's ability to file new lawsuits. *See In re LFG*, 104 F. App'x 571, 574 (7th Cir. 2004) (filing bar for party who made unauthorized filings in another person's case); *Support Sys. Int'l, Inc. v. Mack*, 45 F.3d 185, 186 (7th Cir. 1995) (filing bar for pro se party who continued to file false evidence and did not respond to monetary sanctions). I conclude that it is appropriate to fully bar Prude from litigating civil rights lawsuits for a period of time; I will issue a filing bar that does not include an imminent-danger exception for civil suits. *See Lindsey v. Hoem*, No. 19-3278, 2020 WL 1514856 (7th Cir. Mar. 30, 2020) (citing *Mack* as authorizing such a filing bar). Accordingly, the only cases that Prude may file in this court are habeas corpus petitions relating to his criminal convictions. Any civil lawsuit that Prude files will be docketed and summarily dismissed. After two years, Prude may file a motion asking me to lift or modify this filing bar.

ORDER [Exhibit #4]

IT IS ORDERED that plaintiff is sanctioned as set forth in the opinion above.

Entered October 25, 2024.

BY THE COURT:

/s/

JAMES D. PETERSON
District Judge

# Exhibit #5

- 3-Pages (Double Sided)

*Notification To "Ask" To Use Release Account For Filing Fee

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE,

Plaintiff,

v.

ANTHONY MELI, *et al.*,

Defendant.

[Exhibit#5]

ORDER

17-cv-336-slc

Plaintiff Terrance Prude, proceeding without counsel, challenged disciplinary proceedings held against him at Waupun Correctional Institution following the institution's seizure of a $10,000 check mailed to Prude in December 2016 by a law office. The Seventh Circuit Court of Appeals has denied his motion to proceed in forma pauperis on appeal, and Prude asks me to allow him to use his release account funds to pay the remainder of the appellate filing fee after exhausting the available funds in his trust account. Dkts. 310 and 311. Prude has filed an updated trust account activity statement showing that he cannot pay the full appellate fee from that account. Dkt. 308.

I will deny the motion, but I will allow Prude an extension to pay the filling fee. "A release account is a restricted account maintained by the Wisconsin Department of Corrections to be used upon the prisoner's release from custody upon completion of his sentence." *Wilson v. Anderson*, Case No. 14-C-798, 2014 WL 3671878, at *3 (E.D. Wis. July 23, 2014) (citing Wis. Adm. Code § DOC 309.466). With the exception of initial partial payments of filing fees, this court does not have the authority to tell state officials whether a prisoner should be able to withdraw money from a release account. *See Carter v. Bennett*, 399 F. Supp. 2d 936, 937 (W.D. Wis. 2005). Allowing prisoners to use their release funds to satisfy filing fee payments would significantly deplete the value of the prisoner's release account and undermine the very purpose of the account.

As Prude correctly notes, DAI Policy 309.45.02 states that release account funds may be used for PLRA filing fees upon court notification, and he may ask prison officials to allow him to use funds in his release account to pay the appellate filing fee after exhausting the funds in his trust account.

[Exhibit #5]

But this court cannot *order* Wisconsin prison officials to comply with their own regulations. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."); *Pulera v. Sarzant*, 966 F.3d 540, 551 (7th Cir. 2020) (stating that a "violation of a jail policy is not a constitutional violation enforceable under 42 U.S.C. § 1983"); *see also Henderson v. Ribault*, 23-cv-127-jdp, 2023 WL 2877609, at *2 (W.D. Wis. March 31, 2023) (acknowledging DAI Policy 309.45.02 but explaining that the court cannot order state officials to comply with their own regulations and denying plaintiff's request to use release funds to pay the civil case filing fee).

Prude argues that two special circumstances require a different outcome here, but neither persuades. First, he states that he cannot pay the full appellate filing fee unless he can access his release account funds, but lacking funds to pay the full fee is not a circumstance unique to Prude, and Prude suggests that he could collect the fee from friends and family in his request to extend his payment deadline.

Second, Prude argues that his release account cannot fulfill its propose because he is serving what he terms a de facto life sentence because he will not be eligible for parole until 2049, when he will be 67 years old.[1] *See* dkt. 310-3 at 2. In support, Prude relies on an out-of-district case in which a district court allowed an inmate ineligible for parole until 2071, when the inmate would be approximately 95 years old, to use his release account funds to pay the balance of his filing fee even though "it is less clear" that the court could do so. *Gladney v. Hepp*, No. 24-cv-1452-jps, 2025 WL 901704, at *1 (E.D. Wis. March 25, 2025). But that case is distinguishable in that it involved payment of the fee to file a civil rights action in district court by an inmate alleging that he "is not a litigious filer and that he currently has only one civil lawsuit pending." *Id.* Here, Prude is asking

---

[1]A review of Prude's records via the Wisconsin Department of Corrections offender public search indicates that Prude has a mandatory release date in 2054 as of the date of this order.

[Exhibit#5]

to use his release account funds to pay the filing fee for an appeal that I have determined would be taken in bad faith after I found that he falsified key documents. Dkt. 303. Accordingly, I will not adopt the approach taken in *Gladney* and will deny Prude's motion to use his release account funds.

I will grant in part Prude's motion for an extension of time to pay the appellate filing fee. Prude requests a 90-day extension but does not give sufficient reason for such a long extension beyond suggesting that he will rely on "family and friends" to pay the fee. Dkt. 310 at 2 n.1. He may have until June 16, 2025 to pay the $605 filing fee in full. If he does not pay the fee by that date, it is possible the court of appeals will dismiss the appeal.

ORDER

It is ORDERED that:

(1) Plaintiff's motion to use his release account funds to pay the $605 appellate filing fee, dkts. 310 and 311, is denied; and

(2) Plaintiff may have until June 16, 2025, to pay the appellate filing fee. If he does not pay the fee by that date, it is possible that the court of appeals will dismiss the appeal.

Entered this 30th day of April, 2025

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

# Exhibit #6

• 6-Pages (Single Sided)

**Note:** Issue #1-#9, #11-#12 Are The Nonfrivolous Claims Raised In Support Of My Access To Court Claim In This Civil Complaint (DKt #1)



[DKt#307-1] [1 of 6] [Exhibit# 6]

Plaintiff: Terrance Prude,

-vs-

Defendants: Anthony Meli et al..

• District Court Case# 17-CV-336
• 7th Circuit Appeal Case# 25-1173

# Issues To Be Raised In Good Faith To The Seventh Circuit Court Of Appeals

I, Terrance Prude, take this appeal in good faith and raise all the following issues to the Seventh Circuit Court of Appeals:

• Issue#1: The Federal Magistrate Act (FMA) 28 U.S.C. 636(c)(1) text "any or all proceedings" is unconstitutional, as applied, to the facts of my case.

• Issue#2: The FMA 28 U.S.C. 636(c)(1)'s text "any or all proceedings" is unconstitutionally ambiguous, as applied to the facts of my case, and the rule of lenity should apply to my interpretation of the statutory text.

• Issue#3: The Magistrate judge did not have authority or jurisdictional authority under FMA 28 U.S.C. 636(c)(4) to decide the defendants request to "Vacate

reference" under 636(c)(1). See Brown v. Peters, 940 F.3d 933, 936 (7th Cir. 2019) (citing Branch v. Umphenour, 936 F.3d 994, 1002-04 (9th Cir. 2019).

• Issue #4: The magistrate judge erred by holding that I "impliedly re-consented to magistrate judge jurisdiction on remand by not objecting." This was error because the "implied consent" rule only applies when a party is given "notice of the right to refuse" a magistrate's jurisdiction and does not object. See Stevo v. Frasor, 662 F.3d 880, 883 (7th Cir. 2011) and Roell v. Withrow, 538 U.S. 580, 587 n.5 (2003) ("notification of the right to refuse the magistrate judge is a prerequisite to any inference of consent"). I was never, after remand from the Appeals Court, given notification of the right to refuse the magistrate judge's jurisdiction.

• Issue #5: The magistrate judge committed error when it granted defendants motion for sanctions (DKt #260) against me because: (1) its decision is based on clearly erroneous factual findings due to the fact the challenges/arguments I made in opposition prove the defendants did not meet the preponderence of the evidence burden for sanctions; (2) its decision is clearly arbitrary and clearly unreasonable due to the fact the magistrate judge entirely failed to address any of the facts and arguments I made



which prove the defendants did not prove by a preponderence of the evidence that sanctions was warranted; and (3) it is an abuse of discretion to grant sanctions against me without any explanation as to how or why the defendants arguments in support of sanctions had greater weight (i.e. preponderant) than my arguments which refuted defendants arguments. There was no comment whatsoever by the magistrate judge as to why it adopted the defendants factual disputes over my factual disputes. See Mullen v. Butler, 91 F. 4th 1243, 1255-56 (7th Cir. 2024).

• Issue #6: The magistrate judge committed error in its decision when it ruled the defendants motion for sanctions was not waived/untimely. This ruling violated Sullivan v. Hunt, 350 F.3d 664, 666 (7th Cir. 2003) and Kaplan v. Zenner, 956 F.2d 149, 151 (7th Cir. 1992).

• Issue #7: The magistrate committed error in its decision to "rescind" its order, which sanctioned defendants misconduct, because: (1) the magistrate's ruling on defendants Rule 59(e) motion (Dkt.# 264) did not resolve "a genuine ambiguity, in a judgment previously rendered", under Charles v. Daley, 799 F.2d 343, 348 (7th Cir. 1986), despite the magistrate judge claiming to have resolved such ambiguity in the record as justification.



• Issue #8: The magistrate committed error in its decision to grant the defendants attorney fees against me because: (1) the defendants motion for attorney fees was untimely; (2) the defendants 59(e) motion (Dkt# 264) did not revive the expired time limits of Rule 54(d)(2)(B)(i); (3) the magistrate judge's reliance on Borrero v. City of Chi., 456 F.3d 698 (7th Cir. 2006) does not support its "tolling" argument and such case actually supports my argument opposing "tolling"; and (4) the defendants Rule 59(e) motion had nothing to do with the merits of the court granting their motion for sanctions against me so such motion could not toll the merits for the attorney fees motion. The 59(e) motion did zero to the issues the defendants prevailed on under Charles v. Daley, 799 F.2d 343, 348 (7th Cir. 1986). The 14-days to file the attorney fees motion under Rule 54(d)(2)(B)(i) had already expired before the defendants filed their 59(e) motion.

• Issue #9: The magistrate committed error in its decision to deny my Rule 59(e) motion without mentioning a single reason or word about "why" it was denying it. See LaSalle Nat. Bank of Chicago v. County of DuPage, 10 F. 3d 1333, 1338 (7th Cir. 1993) ("... a district court abuses its discretion when it denies [a motion] with no explanation"). My 59(e) motion challenged why the decision to grant defendants motion for attorney fees was in



error (see Dkt#290, Page 26-31). The magistrate simply denied the motion without explanation. See Dkt.#295 (the order addressed only my Rule 60(b)(4) jurisdictional arguments).

- Issue#10: The magistrate did not have jurisdiction to preside over this case (even prior to appeal to the Seventh Circuit Appeals Court) because the defendant Gary Boughton did not consent to magistrate jurisdiction under 28 U.S.C. 636(c)(1). Only the defendants Anthony Meli, Randy Mueller and Jeremy Westra consented. See Dkt#33. The defendant Gary Boughton was included into this case as a latecomer[1] after original defendants consented. When a "latecomer" does not consent to the magistrate's jurisdiction it voids all decisions made in the case.[2]

- Issue#11: The magistrate did not have jurisdiction to preside over my Rule 69-71 motion (Dkt.#273) because such motion sought to "enforce an existing judgment against a party not already bound to that jurisdiction". See Boim v. American Muslims for Palestine, 9 F.4th 545, 554 (7th Cir. 2021).

---

1 See Prude v. Meli, 2020 WL 1984321, at 1 Footnote 3 (April 27, 2020).

2 See Mark I, Inc. v. Gruber, 38 F.3d 369, 370 (7th Cir. 1994) (addressing "latecomer" who doesn't consent).



· Issue #12: The district court judge Peterson abuse his authority and exceeded his jurisdiction when he: (1) imposed a litigation bar against me based upon the magistrate judges factual findings of this case despite not being the presiding judge of this case; (2) imposed the litigation bar against me from a unrelated case that he had no jurisdictional power to make rulings on or from; and (3) used case Prude v. Cooper as a means of circumventing the need to vacate the magistrate judge reference under 28 U.S.C. 636(c)(4) in order to impose the litigation bar.

To show that an appeal is taken in "good faith", "a court need only find that a reasonable person could suppose that the appeal has some merit." Walker v. O'Brien, 216 F.3d 626, 632 (7th Cir. 2000). The magistrate, in this case, was not (and is not) in a position to determine that this appeal is in bad faith seeing the magistrate was not aware of the reasons the appeal is being taken. The merits mentioned above at Issues #1-12 are "good faith" claims. As such, I should be allowed to continue my informa pauperis status on appeal pursuant to Federal Rules of Appellate Procedure Rule 24(a)(3). Thank you.

Terrance Prude / Terrance Prude / Date: 2/27/2025

# Exhibit #7

- 1-Page (Single Sided)



[Exhibit#7]

**DAI 309.45.02 Inmate Trust System Deductions**
**Attachment A – Release Funds Allowable Uses**
**Effective Date: 10/30/20**

All disbursements made w/release funds shall be made payable to the vendor/provider. Money shall not be sent to family/friends. The purpose of the release account is to help the inmate save money to pay for essential expenses upon reentry to the community.

| Timeline | Release Fund Use |
|---|---|
| Any time | • Birth Certificate or Naturalization Certificate<br>• State of Wisconsin ID Card or Driver's License<br>• Social Security Card<br>• Judgments and fines that are associated with and prevents reinstatement of driving privileges<br>• Back child support that is associated with and prevents reinstatement of driving privileges<br>• Fees related to testing and certified copies of HSED/ GED, HS diploma and transcripts or college transcripts<br>• Fines that are associated with detainers<br>• Fees for driver's education classes<br>• Fees for a driver's license permit<br>• PLRA Fees- fees which are required by State or Federal PLRA to be payable from release accounts (with notification directly from the courts)<br>• Fees for professional licensing or certification<br>• Burial Trust (for inmate's own burial only)<br>• Court order after remedy is sought & court denies DOC's request for modification of the order |
| - Up to 6 months before release or<br>- has an ERP/CIP bed date or<br>- less than a 12 month Deferral<br>-CER eligibility | • Interstate Compact Application Fee |
| Up to 3 months before release | • Security deposit for housing upon release<br>• Release clothing, coat and shoes (total limit of $150)<br>• Application/enrollment fees for third party counseling<br>• Payment/deposit on necessary medical equipment and/or services<br>• Out of state transportation<br>• Application fees for continuing education (inmate enrollment only)<br>• Affordable Care Act Health Insurance Premium |
| Up to 1 year before release and serving a 20 year or more prison sentence | • Warden/designee shall give consideration to inmates requesting utilization of release funds towards unmet court ordered obligations following priority order of restitution, VWS, DNA, child pornography and other imposed 973 surcharges or other justified expense<br>• Release account balance shall not go below $2000 |

# Exhibit #8

- 4-Pages (Double Sided)

To: Business Office

[Exhibit#8] [Page 1]

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-0184 (Rev. 4/2024)

# DISBURSEMENT REQUEST
## SOLICITUD DE DESEMBOLSO

WISCONSIN
Administrative Code
Chapter DOC 309

| INMATE LAST NAME / *APELLIDO DEL RECLUSO(A)* | INMATE FIRST NAME / *PRIMER NOMBRE DEL RECLUSO(A)* | DOC NUMBER / *NUMERO DOC* | FACILITY (Abbreviate)/ *ESTABLECIMIENTO (Abrevie)* | HOUSING UNIT/FLOOR/CELL *UNIDAD / PISO / CELDA* |
|---|---|---|---|---|
| Prude | Terrance | 335878 | WSPF | Foxtrot / 223 |

| PAY TO NAME / *APPELIDO DE BENEFICIARIO* | STREET ADDRESS / *DIRECCIÓN* | CITY / *CIUDAD* | STATE *ESTADO* | ZIP / *CODIGO POSTAL* |
|---|---|---|---|---|
| Clerk, U.S. District Court | 120 N. Henry Street, Room #320 | Madison | WI | 53703 |

REQUEST FOR: *SOLICTUD PARA:*

- ☐ 1 – Copies / *Copias*
- ☐ 2 - Shipping/Freight / *Envío/Mercancía*
- ☐ 3 – Postage / *Estampilla*
- ☐ 4 – Photos / *Fotos*
- ☐ 5 - DOC ID Photo / *Foto ID del Estado*
- ☐ 7 – Savings Deposit / *Deposito Ahorros*
- ☐ 8 - Savings Withdrawal / *Desembolso de Ahorros*
- ☐ 9 – Property Purchase / *Compra de Propiedad*
- ☒ 10 – Other (reason required) * / *Otro (requiere razón)* *
- ☐ 11 – DMV Document(s) / DMV Documento(s) - (No check/No cheque) *

FUNDING SOURCE / *FUENTE DE FONDOS:*
☒ REG - Regular Account/*Cuenta Regular* ☐ WR - Work Release Account/*Cuenta de Trabajo* ☒ REL - Release Account/*Cuenta de Liberación* ☐ Legal Loan/*Préstamo Legal**

*REASON FOR REQUEST OR CASE NUMBER (Must complete if selected 10, 11 OR Legal Loan above). / **RAZÓN POR LA SOLICITUD (Debe completar si escoge casillas 10, 11, o Préstamo Legal arriba)*

use both regular & release accounts to pay the $605.00 filing fee in civil case Prude v. Meli case# 17-CV-336

| INDIVIDUAL ITEMS REQUESTED / *Artículos Individuales Solicitados* | AMOUNT / *CANTIDAD* |
|---|---|
| Regular Account → | $ 15.00 |
| | $ |
| Release Account → | $ 590.00 |
| | $ |

| INMATE SIGNATURE / *FIRMA RECLUSO(A) Do not print or type/ no imprimir ni mecanografiar* | DATE SIGNED *FECHA DE FIRMA* | INMATE ID VERIFIED *ID DE RECLUSO(A) VERIFICADA* Staff Initials: | Total Amount Requested *Suma Total Solicitada:* |
|---|---|---|---|
| [signature] | 4/26/25 | | $ 605.00 |

**DECISION - Following section to be completed by staff only / *DECISIÓN-Siguiente sección debe ser completada por empleados solamente***

| DISBURSEMENT APROVED BY SIGNATURE: *DESEMBOLSO APROBADO POR-FIRMA:* | DATE SIGNED *FECHA DE FIRMA* | Deliver Check to: *Entregar cheque a:* Release Date (if REL acct. is requested): *Fecha de Liberación (si se solicita la cuenta de Liberación):* | |
|---|---|---|---|
| SUPERVISOR APPROVAL SIGNATURE (If required) *FIRMA DEL SUPERVISOR QUE APRUEBA (si solicita)* | DATE SIGNED *FECHA DE FIRMA* | CHECK# *#DE CHEQUE* | DATE PAID *FECHA DE PAGO* |
| REQUEST DENIED BY SIGNATURE *PETICIÓN NEGADA POR-FIRMA* P. Stoudt | DATE SIGNED *FECHA DE FIRMA* 4/28/25 | REASON REQUEST WAS DENIED *RASÓN DE PETICIÓN NEGADA* DAI Policy 309.45.02 (ATT. A.) | |

**DISTRIBUTION:** Original (White) – Business Office; Copy (Yellow) – Inmate

DEPARTMENT OF CORRECTIONS
Division of Adult Institutions
DOC-0643 (Rev. 8/2022)

[Exhibit #8] [Page 2]

WISCONSIN

**INTERVIEW/INFORMATION REQUEST**
***SOLICITUD PARA INFORMACION / ENTREVISTA***

Instruction to Inmate: Do not use this form to contact health staff. Use a Health, Dental or Psychological Service Request.
*Instrucciones para Reclusos: No utilice este formulario para comunicarse con el personal de cuidados de salud. Utilice una solicitud de servicio de cuidados de salud, dentales o psicológicos.*

OFFENDER NAME
*NOMBRE DEL/LA OFENSOR(A)*
Terrance Prude

DOC NUMBER
*NUMERO DEL/LA OFENSOR(A)*
335478

LIVING UNIT
*UNIDAD DE VIVIENDA*
Foxtrot/223

DATE
*FECHA*
5-18-2025

WORK ASSIGNMENT
*ASIGNACION DE TRABAJO*

[X] Interview *Entrevista* [X] Information *Informacion*

STATE REASON FOR INTERVIEW OR SPECIFY INFORMATION REQUESTED
*INDIQUE LA RAZON PARA LA ENTREVISTA O ESPECIFIQUE LA INFORMACION QUE SOLICITA*

To: Ellen Ray
I motioned the court in my civil case Prude v. Meli, #17-CV-336 requesting that the court "order" WSPF to disburse funds from my release account to pay the full $605.00 filing fee. The court issued an order stating that I "may ask prison officials to allow him to use funds in his release account to pay the appellate filing fee after exhausting the funds in his trust account.", but the court refused to "order" WSPF to disburse funds. This is my request to use my release account to use $600.00 (& $5.00 from my regular account) to pay the $605.00 filing fee. See disbursement attached & court order & stamped envelope to mail the check in. Thanks.

(Do Not Write Below This Line) *(No Escriba Debajo Esta Linea)*

**DISPOSITION OF REQUEST** ***DISPOSICION DE LA SOLICITUD***

[ ] You Will Be Interviewed
*Usted sera entrevistado*
[ ] Information to Follow
*Informacion Sera Proveida*
[ ] Request Referred To:
*Solicitud Refereida A:*

Date:
*Fecha:* 5-27-25

Time:
*Hora:*

Information/Comment:
*Informacion/Comentario:*
1) Your paper work DENIES the use of release funds to pay the filing fee.
2) Per policy 309.45.02, you cannot use release funds without a court order stating they can be used. Request denied.

A Tiefbach
Signed *Firmado*

Department *Departamento*

[Exhibit #8]
[Page 3]

TO:
A: Terrance Prude
NUMBER:
NUMERO: 335678
UNIT:
UNIDAD de VIVIENDA: Foxtrot / 223
DATE:
FECHA: 5/18/2025

FOLD *DOBLE*

**DESCARGO DE RESPONSABILIDAD (Disclaimer)**

Esta es una traducción de un documento escrito en inglés, distribuido como una cortesía a las personas que no pueden leer inglés. Si resulta alguna diferencia o algún malentendido con esta traducción, el único documento reconocido sera la versión en inglés.

This document contains translations of the English-language on this document provided as a courtesy to those not fluent in English. If differences or any misunderstandings occur, the document of record shall be the related English-language on this document.

FOLD *DOBLE*

**DEPARTMENT OF CORRECTIONS**
Division of Adult Institutions
DOC-0643 (Rev. 4/2015)

**WISCONSIN**

**INTERVIEW/INFORMATION REQUEST**
***SOLICITUD POR INFORMACION/ENTREVISTA***

TO:
A: Ms. Ellen Ray (Institution Litigation Coordinator)
DEPARTMENT:
DEPARTAMENTO: Inmate Complaint Review System (Inmate Complaint Dept.)
DATE:
FECHA: 5/18/2025

For Confidentiality Use Either Staple/Scotch Tape or an Envelope
*Por Confidencialidad Engrape o use Cinta Scotch o un Sobre*



# WISCONSIN DEPARTMENT OF CORRECTIONS

Governor Tony Evers / Secretary Jared Hoy

**Wisconsin Secure Program Facility**

[Exhibit#8] [Page 4]

05/30/2025
DAI-2025-98592

Prude, Terrance D - 335878
UNIT: _F-R2 - _223_L
Wisconsin Secure Program Facility
P.O. BOX 1000
Boscobel, WI 53805-1000

Your correspondence dated May 28, 2025, requesting the use of Release Account funds to pay a court filing fee has been received and reviewed.

This subject matter is currently under review within the Inmate Complaint Review System (ICRS). I dismissed complaint WSPF-2025-6472 on 5/08/25 as the Reviewing Authority (RA) and it was dismissed by the Corrections Complaint Examiner (CCE) on 5/28/25. This complaint awaits the decision of the Office of the Secretary. I will not address this matter further, outside the ICRS.

I am returning the following submitted documentation:

One (1) - "Notice of Electronic Filing" for case "3:17-cv-00336-jdp"
One (1) - DOC-184 from you to "Clerk, U.S. District Court"
One (1) - 6"x9" stamped envelope with included letter from you to "Clerk of Court"

Sincerely,

P. Stoudt

Paula J Stoudt
Warden

PJS/dsm

CC: File #335878

# Exhibit #9

- 1-Page (Single Sided)

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**PLRA C.R. 3(b) FINAL ORDER**

July 18, 2025

| | |
|---|---|
| No. 25-1173 | TERRANCE PRUDE,<br>Plaintiff - Appellant<br><br>v.<br><br>ANTHONY MELI and GARY BOUGHTON,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 3:17-cv-00336-slc<br>Western District of Wisconsin<br>Magistrate Judge Stephen L. Crocker | |

The pro se appellant was DENIED leave to proceed on appeal in forma pauperis by the appellate court on April 17, 2025 and was given fourteen (14) days to pay the $605.00 filing fee. The pro se appellant has not paid the $605.00 appellate fee. Accordingly,

**IT IS ORDERED** that this appeal is **DISMISSED** for failure to pay the required docketing fee pursuant to Circuit Rule 3(b).

**IT IS FURTHER ORDERED** that the appellant pay the appellate fee of $605.00 to the clerk of the district court. The clerk of the district court shall collect the appellate fees from the prisoner's trust fund account using the mechanism of *Section 1915(b). Newlin v. Helman, 123 F.3d 429,* 433 (7th Cir. 1997).

form name: c7_PLRA_3bFinalOrder (form ID: 142)

Exhibit #10

- 1-Page (Single Sided)

[Exhibit #10]

DOC NO
REC'D/FILED
2018 SEP 27 AM 10: 06
PETER OPPENEER
CLERK US DIST COURT
WD OF WI

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

Terrance Prude,

Plaintiff(s),

v.

Case No. 17-cv-336-wmc

Anthony Meli, et al.,

Defendant(s).

## NOTICE OF MAGISTRATE AVAILABILITY AND CONSENT/DECLINE TO REASSIGNMENT

Magistrate Judge Stephen L. Crocker is available to conduct all proceedings in this case, including screening plaintiff's complaint under 28 U.S.C. § 1915A, handling all motions, presiding over trial and entering final judgment. Magistrate Judge Crocker may exercise this authority only if all parties voluntarily consent. You may consent to have this case referred to Magistrate Judge Crocker, or you may withhold your consent without adverse substantive consequences. Indicate below if you consent or decline to the reassignment of this case to the magistrate judge.

☑ **Consent** ☐ **Decline Consent**

**Do not e-file this document.** No judge will be informed of a party's response to this notification, unless all parties have consented to the assignment of the matter to Magistrate Judge Crocker. There is no need to serve the opposing party.

**Instead, return this completed form via regular mail or email in PDF format to consents@wiwd.uscourts.gov within 14 days.**

Party(s) represented

Terrance Prude
Party or Attorney signature

9-23-2018
Date

# Exhibit #11

- 1-Page (Single Sided)

 [Exhibit #11]

MEMORANDUM OF UNDERSTANDING

REGARDING CONSENT TO MAGISTRATE JUDGE JURISDICTION

This Memorandum of Understanding between the United States District Court for the Western District of Wisconsin and the Wisconsin Department of Justice memorializes an agreement by the Department, as counsel for the State party defendants in cases brought by prisoners under 42 U.S.C. § 1983, to consent to referral of those cases to Magistrate Judge Stephen Crocker and to his conducting all proceedings in those cases. See 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73.

The Department may withhold consent in an individual case by notifying the clerk's office of its decision to withhold consent by the deadline for the parties' consent in that case. Both the Department and the District Court understand that under Rule 73(b)(2), Assistant Attorneys General may withhold consent without adverse substantive consequences.

This Memorandum replaces the understanding outlined in the Memorandum of Understanding between Peter Oppeneer and Corey Finkelmeyer dated September 28, 2012.

This Memorandum may be terminated by either party on 60 days' notice.

For the Department of Justice

[signature] 1. 20. 16

Corey Finkelmeyer
Assistant Attorney General
Director, Civil Litigation Unit

Date

For the United States District Court
Western District of Wisconsin

Peter Oppeneer

Digitally signed by Peter Oppeneer
DN: cn=Peter Oppeneer, o=District Court, ou=WIWD, email=Peter.oppeneer@wiwd.uscourts.gov, c=US
Date: 2016.01.19 15:30:45 -06'00'

Peter Oppeneer
Clerk of Court

Date

# Exhibit #12

- 1-Page (Single Sided)

[Exhibit #12]

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

TERRANCE PRUDE,

Plaintiff,

v.

ANTHONY MELI, et al.

Defendants.

ORDER

17-cv-336-wmc

---

The parties in this case having stipulated their consent to jurisdiction by a United States Magistrate Judge,

IT IS ORDERED that this case be referred to Stephen L. Crocker, United States Magistrate Judge, to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. §636(c) and Fed. R. Civ. P. 73.

Entered this 2nd day of October, 2018.

BY THE COURT:

/s/

WILLIAM M. CONLEY
District Judge

# Exhibit #13

- 3-Pages (Single Sided)

[Exhibit#13] [Page 1 of 3]

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## PLRA FEE NOTICE AND ORDER

February 19, 2025

| | |
|---|---|
| No. 25-1173 | TERRANCE PRUDE,<br>Plaintiff - Appellant<br><br>v.<br><br>ANTHONY MELI and GARY BOUGHTON,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 3:17-cv-00336-slc<br>Western District of Wisconsin<br>Magistrate Judge Stephen L. Crocker<br>Clerk/Agency Rep Joel W. Turner | |

This court's records indicate that on February 19, 2025, the District Court denied your motion to proceed in forma pauperis. Pursuant to Federal Rule of Appellate Procedure 24(a),

**WITHIN THE NEXT THIRTY (30) DAYS YOU MUST EITHER:**

1. Pay the required $600.00 docketing fee PLUS the $5.00 notice of appeal filing fee to the District Court Clerk, **if you have not already done so.** The Court of Appeals cannot accept this fee. You should keep a copy of the receipt for your records.

2. File a motion to proceed on appeal in forma pauperis with the Court of Appeals. This motion must be supported by a sworn affidavit in the form prescribed by **Form 4** of the *Appendix of Forms to the Federal Rules of Appellate Procedure (as amended 12/01/2018)*, listing the assets and income of the appellant(s). In addition, you must provide this court with a brief memorandum explaining why you contend the district court's denial of leave to proceed on appeal in forma pauperis is erroneous. **NOTE:** The document should be titled "**MEMORANDUM IN SUPPORT OF PLRA MOTION FOR LEAVE TO PROCEED ON APPEAL IN**



FORMA PAUPERIS" and must be filed within thirty (30) days of service of the order of the district court.

Further, this appeal is subject to the Prison Litigation Reform Act. Accordingly,

**IT IS ORDERED** that all other proceedings in this appeal are **SUSPENDED** pending the assessment and payment of any necessary fees. See *Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997). The court will take no further action in this appeal until the fee status is resolved.

Neither party should tender any brief or motion that is not related to appellant's fee status on appeal. Appellee is under no obligation either to file a brief or to respond to any such motion filed by appellant. Any motion not related to appellant's fee status will be deemed denied without further court action.

form name: c7_PLRA_FeeNoticeSent_AC (form ID: 226)

Deadline was extended til June 16, 2025 to pay the full #605.00

UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604

Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

ORDER

[Exhibit#13]

April 17, 2025

*Before*

[Page 3 of 3]

THOMAS L. KIRSCH II, *Circuit Judge*
JOHN Z. LEE, *Circuit Judge*

| | |
|---|---|
| No. 25-1173 | TERRANCE PRUDE, Plaintiff - Appellant<br><br>v.<br><br>ANTHONY MELI and GARY BOUGHTON, Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 3:17-cv-00336-slc<br>Western District of Wisconsin<br>Magistrate Judge Stephen L. Crocker | |

The following are before the court:

1. **RENEWED MOTION TO CONTINUE IN FORMA PAUPERIS STATUS ON APPEAL,** filed on February 25, 2025, by the pro se appellant.

2. **MOTION PURSUANT TO FED. R. APP. P. RULE 24(a)(5) DUE TO THE DISTRICT COURT MAGISTRATE JUDGE ERRONEOUSLY DENYING MOTION TO CONTINUE IN FORMA PAUPERIS,** filed on March 11, 2025, by the pro se appellant.

3. **AFFIDAVIT ACCOMPANYING MOTION FOR PERMISSION TO APPEAL IN FORMA PAUPERIS,** filed on March 17, 2025, by the pro se appellant.

Upon consideration of appellant's motions, the district court's order pursuant to 28 U.S.C. § 1915(a)(3) certifying that the appeal was not filed in good faith, and the record on appeal,

**IT IS ORDERED** that the motions for leave to proceed in forma pauperis on appeal are **DENIED.** *See Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000). The appellant has not identified a good faith issue that the district court erred in dismissing the case. The appellant shall pay the required docketing fee within 14 days, or this appeal will be dismissed for failure to prosecute pursuant to Circuit Rule 3(b). *See Newlin v. Helman*, 123 F.3d 429, 434 (7th Cir. 1997).

(Deadline to pay was extended til June 16, 2025)

# Exhibit #14

- 6-Pages (Single Sided)

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-410 (Rev. 04/18)

[Exhibit #14] [Page 1 of 6]

WISCONSIN
Administrative Code
Chapter DOC 310

# ICE RECEIPT
# COMPLAINT NUMBER WSPF-2025-6472
# * * * ICRS CONFIDENTIAL * * *

---

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 05/08/2025 |
| Date Complaint Received: | 05/08/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| Brief Summary: | Challenges denial of use of release account monies to pay a court ordered fee. |

This is to acknowledge the complaint you filed which was received on the date indicated. Depending on the nature of the complaint, you may or may not be interviewed by the ICE. A recommendation on the complaint will be made and submitted to the appropriate reviewing authority within 30 days of acknowledgement. A decision will be made by the appropriate reviewing authority within 15 days following receipt of the recommendation unless extended for cause.

**Please write to the ICE if this issue is resolved before you receive an answer.**

[Exhibit #14] [Page 2 of 6]

# ICE REPORT
# COMPLAINT NUMBER WSPF-2025-6472
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

Date Complaint Acknowledged: 05/08/2025

Inmate Contacted? No

Date Complaint Received: 05/08/2025

Subject of Complaint: 17 - Inmate Accounts

Person(s) Contacted: Ms. Titlbach, WSPF Business Office

Document(s) Relied Upon: 309.45.02

Brief Summary: Challenges denial of use of release account monies to pay a court ordered fee.

Summary of Facts: Mr. Prude challenges not being able to use his release funds to pay a court fee.

DAI 309.45.02 Attachment A states in part;
PLRA Fees- fees which are required by State or Federal
PLRA to be payable from release accounts (with
notification directly from the courts)

A review of the order from the court does not direct or at any point mention the use of funds from his release account.

As such, the denial was appropriate and it is recommended this complaint be dismissed.

ICE Recommendation: Dismissed

Recommendation Date: 05/08/2025

D. Goff - Institution Complaint Examiner

Case 2:25-cv-01083-WED Filed 07/24/25 Page 52 of 136 Document 1-1

[Exhibit#14] [Page 3 of 6]

# REVIEWING AUTHORITY'S DECISION
# COMPLAINT NUMBER WSPF-2025-6472
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 05/08/2025 |
| Date Complaint Received: | 05/08/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| Brief Summary: | Challenges denial of use of release account monies to pay a court ordered fee. |
| ICE's Recommendation: | Dismissed |
| Reviewer's Decision: | Dismissed |
| Decision Date: | 05/08/2025 |

Paula Stoudt

P. Stoudt - Warden

A complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405 (DOC 310.12, Wis. Adm. Code).

Case 2:25-cv-01083-WED Filed 07/24/25 Page 53 of 136 Document 1-1

# CCE RECEIPT
# COMPLAINT NUMBER WSPF-2025-6472
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 05/15/2025 |
| Date Appeal Received: | 05/15/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| Brief Summary: | Challenges denial of use of release account monies to pay a court ordered fee. |

Your request for review has been received.

The Corrections Complaint Examiner (CCE) has 35 days to submit a recommendation to the Office of the Secretary (OOS) for Review. The OOS has 45 days to make a decision after receiving the CCE's report. The OOS may extend the time for making a decision for cause and upon notice to all interested parties.

If you do not receive a decision or other notices within that time, you may write directly to:

Secretary of the Department of Corrections
Post Office Box 7925
Madison, WI 53707-7925

[Exhibit #14] [Page 5 of 6]

# CCE REPORT
# COMPLAINT NUMBER WSPF-2025-6472
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 05/15/2025 |
| Date Appeal Received: | 05/15/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| Brief Summary: | Challenges denial of use of release account monies to pay a court ordered fee. |
| Method of Disposition: | Review on Record? Yes Investigation? No |
| Document(s) Relied Upon: | Complaint, order, appeal |
| CCE's Recommendation: | Dismissed |
| | The institution addressed the complaint. The order the complainant entered into evidence does not require the DOC to access release account funds to pay the filing fee. |
| Recommendation Date: | 05/28/2025 |

Emily Davidson

E. Davidson - Corrections Complaint Examiner

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-403 (Rev. 04/18)

[Exhibit #14] [Page 6 of 6]

WISCONSIN
Administrative Code
Chapter DOC 310

# OFFICE OF SECRETARY DECISION
# COMPLAINT NUMBER WSPF-2025-6472
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 05/15/2025 |
| Date Appeal Received: | 05/15/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| Brief Summary: | Challenges denial of use of release account monies to pay a court ordered fee. |
| OOS Decision: | Dismissed |
| Decision Comments: | The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 05/28/2025 in the above appeal: The attached Corrections Complaint Examiner's recommendation to DISMISS this appeal is accepted as the decision of the Secretary. |
| Decision Date: | 06/05/2025 |

[signature]

C. O'Donnell - Office of the Secretary

Print Date: June 06, 2025 Page 1 of 1 Office of the Secretary
** ICRS CONFIDENTIAL **
Case 2:25-cv-01083-WED Filed 07/24/25 Page 56 of 136 Document 1-1

# Exhibit #15

• 5-Pages (Single Sided)

# ICE RECEIPT
# COMPLAINT NUMBER WSPF-2025-7413
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 05/28/2025 |
| Date Complaint Received: | 05/28/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| Brief Summary: | Alleges he is being deprived access of his release account |

This is to acknowledge the complaint you filed which was received on the date indicated. Depending on the nature of the complaint, you may or may not be interviewed by the ICE. A recommendation on the complaint will be made and submitted to the appropriate reviewing authority within 30 days of acknowledgement. A decision will be made by the appropriate reviewing authority within 15 days following receipt of the recommendation unless extended for cause.

**Please write to the ICE if this issue is resolved before you receive an answer.**

# ICE REJECTION
# COMPLAINT NUMBER WSPF-2025-7413
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information: REJECTED**

Date Complaint Acknowledged: 05/28/2025

Inmate Contacted? No

Date Complaint Received: 05/28/2025

Subject of Complaint: 17 - Inmate Accounts

Document(s) Relied Upon: WSPF-2025-6472

Brief Summary: Alleges he is being deprived access of his release account

Rejection Comment: This complaint was previously addressed in WSPF-2025-6472.

In review of the submitted documents, an order by the court states in part;

Plaintiff's motion to use his release funds to pay the $605 appellate filing fee, dkts. 310 and 311 is denied;

Based on this additional information which supports the finding of the previous complaint, this complaint is rejected as previously addressed.

Rejection Code: Previously addressed with prior use of ICRS.

Decision Date: 05/28/2025

D. Goff - Institution Complaint Examiner

Per DOC 310.10(10), you may appeal the rejection of this complaint within 10 days to the appropriate reviewing authority. The reviewing authority will only review the basis for the rejection of this complaint, not the merits of the complaint.

If you wish to appeal, complete form DOC 2182 Request for Review of Rejected Complaint and send to:

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-402 (Rev. 04/18)

[Exhibit #15] [Page 3 of 5]

WISCONSIN
Administrative Code
Chapter DOC 310

# ICE REJECTION
# COMPLAINT NUMBER WSPF-2025-7413
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information: REJECTED**

INSTITUTION COMPLAINT EXAMINER
WISCONSIN SECURE PROGRAM FACILITY
1101 MORRISON DRIVE
P.O. BOX 1000
BOSCOBEL, WI 53805-1000

The reviewing authority's decision is final pursuant to s. DOC 310.10(10), Wis. Adm. Code.

Print Date: May 28, 2025 Page 2 of 2 Institution Complaint Examiner's Office
** ICRS CONFIDENTIAL **
Case 2:25-cv-01083-WED Filed 07/24/25 Page 60 of 136 Document 1-1

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-2193 (Rev. 04/18)

[Exhibit#15] [4 of 5 Pages]

WISCONSIN
Administrative Code
Chapter DOC 310

# ICE RECEIPT OF REJECTION APPEAL
# COMPLAINT NUMBER WSPF-2025-7413
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

Date Rejection Appeal Acknowledged: 06/02/2025

Date Rejection Appeal Received: 06/02/2025

Subject of Complaint: 17 - Inmate Accounts

Brief Summary: Alleges he is being deprived access of his release account

Your request for review of your rejected complaint has been received. The appropriate reviewing authority shall only review the basis for the rejection. You will receive a written decision from the reviewing authority. The reviewing authority's decision is final pursuant to s. DOC 310.10(10), Wis. Adm. Code.

Print Date: June 02, 2025 Page 1 of 1 Institution Complaint Examiner's Office
* * * ICRS CONFIDENTIAL * * *

Case 2:25-cv-01083-WED Filed 07/24/25 Page 61 of 136 Document 1-1

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-2194 (Rev. 04/18)

[Exhibit #15] [Page 5 of 5]

WISCONSIN
Administrative Code
Chapter DOC 310

# REVIEWING AUTHORITY'S DECISION ON COMPLAINT REJECTION
# COMPLAINT NUMBER WSPF-2025-7413
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Rejection Appeal Acknowledged: | 06/02/2025 |
| Date Rejection Appeal Received: | 06/02/2025 |
| Subject of Complaint: | 17 - Inmate Accounts |
| ICE's Rejection Reason: | Previously addressed with prior use of ICRS. |
| Reviewer's Decision: | This complaint was appropriately rejected by the ICE in accordance with DOC 310.10(6). |
| Decision Date: | 06/02/2025 |

Paula Stoudt

P. Stoudt - Warden

Print Date: June 02, 2025 Page 1 of 1 Reviewer's Office
* ICRS CONFIDENTIAL *
Case 2:25-cv-01083-WED Filed 07/24/25 Page 62 of 136 Document 1-1

Exhibit #16

- 6-Pages (Single Sided)

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-410 (Rev. 04/18)

[Exhibit #16] [Page 1 of 6]

WISCONSIN
Administrative Code
Chapter DOC 310

# ICE RECEIPT
# COMPLAINT NUMBER WSPF-2025-7612
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 06/02/2025 |
| Date Complaint Received: | 06/02/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges the Warden refused to address his issue. |

This is to acknowledge the complaint you filed which was received on the date indicated. Depending on the nature of the complaint, you may or may not be interviewed by the ICE. A recommendation on the complaint will be made and submitted to the appropriate reviewing authority within 30 days of acknowledgement. A decision will be made by the appropriate reviewing authority within 15 days following receipt of the recommendation unless extended for cause.

**Please write to the ICE if this issue is resolved before you receive an answer.**

Print Date: June 02, 2025 Page 1 of 1 Institution Complaint Examiner's Office
* * * ICRS CONFIDENTIAL * * *
Case 2:25-cv-01083-WED Filed 07/24/25 Page 64 of 136 Document 1-1

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-401 (Rev. 04/18)

WISCONSIN
Administrative Code
Chapter DOC 310

[Exhibit # 16] [Page 2 of 6]

# ICE REPORT
# COMPLAINT NUMBER WSPF-2025-7612
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

Date Complaint Acknowledged: 06/02/2025 Inmate Contacted? No

Date Complaint Received: 06/02/2025

Subject of Complaint: 1 - Staff

Brief Summary: Alleges the Warden refused to address his issue.

Summary of Facts: PIOC Prude alleges the Warden refused to address his issue in regards to the use of his release account.

PIOC Prude previously submitted WSPF-2025-6472 and WSPF-2025-7413 complaints which address the use of his release account.

The Reviewing Authority for both submissions is Warden Stoudt.

Per the Wardens letter dated 05/30/2025, PIOC Prude was notified of his issue being addressed through the Inmate Complaint Review System (ICRS).

As such, this examiner recommends this complaint be dismissed.

ICE Recommendation: Dismissed

Recommendation Date: 06/02/2025

S. Ellis

S. Ellis - Institution Complaint Examiner

[Exhibit # 16] [Page 3 of 6]

# REVIEWING AUTHORITY'S DECISION
# COMPLAINT NUMBER WSPF-2025-7612
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 06/02/2025 |
| Date Complaint Received: | 06/02/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges the Warden refused to address his issue. |
| ICE's Recommendation: | Dismissed |
| Reviewer's Decision: | Dismissed |
| Decision Date: | 06/02/2025 |

P. Jaeger - Warden

A complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405 (DOC 310.12, Wis. Adm. Code).

[Exhibit#16] [Page 4 of 6]

# CCE RECEIPT
# COMPLAINT NUMBER WSPF-2025-7612
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 06/06/2025 |
| Date Appeal Received: | 06/06/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges the Warden refused to address his issue. |

Your request for review has been received.

The Corrections Complaint Examiner (CCE) has 35 days to submit a recommendation to the Office of the Secretary (OOS) for Review. The OOS has 45 days to make a decision after receiving the CCE's report. The OOS may extend the time for making a decision for cause and upon notice to all interested parties.

If you do not receive a decision or other notices within that time, you may write directly to:

Secretary of the Department of Corrections
Post Office Box 7925
Madison, WI 53707-7925

# CCE REPORT
# COMPLAINT NUMBER WSPF-2025-7612
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 06/06/2025 |
| Date Appeal Received: | 06/06/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges the Warden refused to address his issue. |
| Method of Disposition: | Review on Record? Yes    Investigation? No |
| Person(s) Contacted: | ICE, Business office via ICE |
| Document(s) Relied Upon: | Complaint, correspondence, efiling document, appeal |
| CCE's Recommendation: | Dismissed |
| | The institution addressed the complaint. As noted by the facility, this has already been addressed through the complaint system: WSPF-2025-6472 and WSPF-2025-7413.<br><br>There is not a court order for the complainant to use release account funds to pay PLRA fees. |
| Recommendation Date: | 06/10/2025 |

[signature]

E. Davidson - Corrections Complaint Examiner

# OFFICE OF SECRETARY DECISION
# COMPLAINT NUMBER WSPF-2025-7612
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 06/06/2025 |
| Date Appeal Received: | 06/06/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges the Warden refused to address his issue. |
| OOS Decision: | Dismissed |
| Decision Comments: | The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 06/10/2025 in the above appeal: The attached Corrections Complaint Examiner's recommendation to DISMISS this appeal is accepted as the decision of the Secretary. |
| Decision Date: | 06/24/2025 |

C. O'Donnell - Office of the Secretary

# Exhibit #17

- 1-Page (Single Sided)



Terrance Prude #335878
Wisconsin Secure Program Facility
P.O. Box 1000
Boscobel, WI 53805

**U.S. District Court**

**Western District of Wisconsin**

## Notice of Electronic Filing

The following transaction was entered on 5/19/2025 at 1:31 PM CDT and filed on 5/19/2025

**Case Name:** Prude, Terrance v. Meli, Anthony et al
**Case Number:** 3:17-cv-00336-jdp
**Filer:**
**WARNING: CASE CLOSED on 08/20/2024**
**Document Number:** 314(No document attached)

**Docket Text:**
** TEXT ONLY ORDER **
**The court previously denied plaintiff's motion for an order directing prison staff to submit his entire $605 appellate filing fee using funds from his release account. Dkt. [312]. Plaintiff now moves for the court's permission for him to ask the business office to withdraw the fee from his release account in the absence of a court order. Dkt. [313]. Plaintiff doesn't need the court's permission to make such a request, so his motion is DENIED. Signed by District Judge James D. Peterson on 5/19/2025. (jls),(ps)**

# Exhibit #18

- 22-Pages (Double Sided)

[Exhibit #18] [1 of 22]

Western District Court

Plaintiff: Terrance Prude,

-vs-

Defendants: Anthony Meli, et al.

Case# 17-CV-336

| Page Length Complies With Civil Local Rule 7(f) & 56(b)(8)(A) | Plaintiff Terrance Prude's Response To Defendants Sanctions Motion (Dkt# 249) |
|---|---|

Yana Pusich's Testimony

(1) The defendants attorney torturous citations to the record of Ms. Pusich's testimony is tactical in their attempt carry their burden in proving sanctions is appropriate. Ms. Pusich's testimony did not even open the door in attempting to prove I allegedly fabricated records/documents in this case.

(2) Pusich testified that she has no Knowledge at all of whether: (1) I've lied as alleged by defendants; (2) Meli actually placed the documents in question into the security file; (3) Meli chose not to place the documents in question into the security file; (4) Meli changed the content of the documents in question; (5) Meli told me I cannot submit evidence in my favor at the prison disciplinary hearing. See Hearing Transcript from April 22, 2024 (Dkt. #245 hereafter), at Page 14 par 1-24.

(3) Pusich testified that there was, in fact, no "policy" that required her (or Meli when he had her job as Security Director) to deposit communications into the "security file". See DKt.#245, Page 15 par 7-14.

(4) The most important part of Pusich's testimony was when she testified that the only reason a security director would choose to not place a document into the "security file" is if the motive was "to lie". See DKt.# 245, Page 16 par 10-14. Also, most important, is Pusich's testimony confirming that choosing not to place a document into the security file means there would be no record of it in the security file. See DKt.#245, Page 16 par 15-18. Pusich's testimony that she did not locate the specific documents in question in this case makes sense because the records existing would show that the records were authentic and are not fabrications. The power to omit a document from the "security file" and then turn around and argue that because of that omission the omitted document is not a real or authentic document is exactly what Meli has done here. Pusich's testimony proves that the record of what an authentic document is and what is not an authentic document can be manipulated (for the purpose "to lie") by merely choosing to omit the document from the "security file". DKt#245, Page 16 par 5-18.

(5) Pusich's testimony actually laid the foundation to support my argument that Meli did omit the documents from the "security file" for the sake of manipulating the record. No one really expects Meli to document and record his own unlawful conduct, do they?

## Defendant Meli's Admissions Constitutes "Judicial Admissions"

(6) Prior to the evidentiary hearing, Meli testified that he did, in fact, specifically recall receiving DKt# 1-1, Page 5 from me. At Meli deposition 2-9-2024, Meli was asked "...so my question is just with respect to what he's wrote here, right, "can you submit the Meyeroff letter to the HO I gave you. Can I submit a written statement." Everything he's written here, do you recall receiving this from Mr. Prude?" to which Meli answered "Yes.". See Deposition Transcript (DKt# 216 hereafter), Page 97 Line 25 through Page 98 Line 6. The line of questioning was repeated and Meli answer remained the same: "And you do remember Mr. Prude asking you to submit the Meyeroff letter to the hearing officer?" and Meli, this time, explained his previous "Yes" answer by explaining: "Now that I'm reading this [DKt#1-1, Page 5] I do, but

I don't recall a Meyeroff letter.". See Dkt. #216, Page 99 Line 11-14. This admission of receiving such document is dispositive to the allegations triggering the defendants motion for sanctions. Meli's allegation that I allegedly fabricated the documents in question is solely because they are not in the very "security file" that Meli omitted it from. Meli's argument is: (1) the documents in question are not in the "security file"; (2) because they are not in the "security file" they are not authentic; (3) because they are not authentic I (Prude) fabricated the documents; and (4) If Meli would have received the Document at Dkt# 1-1 Page 5 it would have been placed into the "security file".

(7) Both cannot be true. Meaning, Meli testifying that any communications he received from me were placed in the security and acknowledging that he did received Dkt. #1-1 Page 5 (and responded to it) but such document is not in the "security file". The only thing that makes sense is that Meli chose not to place the document into the record after receiving it was for the purpose of trying to manipulate the record in order "to lie" as Ms. Pusich testified. If we take Meli at his word that: (1) all communications he received from me were, in fact, put into the "security file", and (2) Meli did receive the documents in question

(at DKt.#1-1 Page 5) from me, then one must scratch his head and ask: Why isn't it in the "security file"?

(8) At the evidentiary hearing Meli, again, corroborated the fact that he did receive DKt#1-1 Page 5 from me. See DKt.#245, Page 52 Line 4-ending on Page 56 Line 25. Meli even testified that had the documents in question been in the file there would not be an allegation that I fabricated document(s) [redacted] because it would be "assume[d] that it was an original response to the- - to the request." See DKt#245, Page 68 Line 7-1 of Page 69. Although a "hypothetical question", it has severe substance to the core argument that Meli is the reason the document that he, himself, admitted receiving is not in the "security file". The power of labelling a document authentic is being governed by which documents he chooses to store into the "security file". Further, the power of claiming I fabricated a document is being governed by which documents Meli chooses to omit from the "security file". This is narrative-controlling-power.

(9) Meli has testified that all request forms he received from me are to be placed into the "security file" because those documents are authentic. I would argue that the documents Meli admitted to receiving but did not put

into the "security file" are just as authentic as those placed into this so-called "security file". If "policy" or "custom" or "practice" calls for all communications to a Security Director to be placed into a "security file" and seeing Meli admitted several times to receiving DKt#1-1,5 and even this Court has acknowledged "-- there is no doubt that they were not in the file; okay?" (DKt.#245, Page 70 Line 20-21), that "policy", "custom", or "practice" requires DKt#1-1, Page 5 to be classified as authentic because Meli received it but Meli failed to follow procedure. Let's face it, had Meli followed this so-called policy DKt.#1-1, Page 5 would not be questioned because it would be clothed in the "authentic" label merely because it exist in the "security file".

(10) The judicial admission made by Meli that he received DKt.#1-1, Page 5 must be dispositive. Meli cannot argue (through his attorney) that had he received DKt#1-1, Page 5 Meli would have placed it in the "security file" and that it's not in the file because Meli didn't receive it. While on the other hand, Meli is testifying that he did receive DKt.#1-1, Page 5 (and responded to it). Meli cannot/should not be allowed to slither his way out of this "judicial admission" because it undercuts the attorneys claim that it's a fabricated document merely because it's not in the "security file". If Meli would have testified that he didn't received DKt.#1-1

Page 5 then that, and only that, would explained "why" such document is not in the "security file" in accordance with this so-called "policy", or "custom", or "practice". Meli's admissions were made in a pleading and in front of this Court during live testimony. See DKt.#245, Page 52 Line 4 through to Page 56 Line 25. See Murrey v. U.S., 73 F.3d 1448, 1445 (7th Cir. 1996)("A judicial admission trumps evidence. This is the basis of the principle that a [defendant] can plead himself out of court.")(internal case citations omitted). Again, the motion for sanctions against me is only being launched based on which documents Meli chose to omit from the record that he did receive. Meli failed to meet his burden that I fabricated these records. Meli cannot violate the policy that requires him to put documents into the "security file" and then argue that them same omissions from the "security file" are not authentic because they're not in the "security file". That is absolutely absurd. Meli's admissions trumps any other evidence that is being used to undercut his admissions. Murrey v. U.S., Id. at 1445.

DKt.#206-3 Page 1 Was Not Filed Upon The Court So No "Fraud on the Court" Is Possible

(11) DKt.#206-3 is not a document that I fabricated.

[8 of ~~██~~ 22]

This Court expressed that the burden of proving that I "submitted false documents in support of [my] claims in this case" is "on the defendants to prove". See DKt.# 245, Page 74 Line 10-14. The document in question was submitted to defendants during discovery, not filed upon the Court. The defendants admit that it was never filed upon the Court. See DKt.#204, Page 3("Of these four, Prude submitted three to the Court... while the remaining one was produced in discovery only"). If defendants wanted to raise an issue about DKt.# 206-3 Page 1 ● authenticity they were required to argue it as sanctions under discovery Rule 37 (or whatever other discovery rule that governs sanctioning alleged discovery violations or concerns). Defendants have already alleged that they are not raising Rule 37 sanctions ~~██~~ or Rule 11 sanctions. DKt.#221. In summary, it's ● not even possible to argue that DKt.#206-3 Page 1 was fraud on the Court because it was never filed on the Court. At best, defendants allegations raise discovery objections to what is alleged to be discovery conflicts, not fraud against the Court. As such, defendants failed to prove both that the document was fabricated and that (most importantly) it was filed upon the Court. A discovery sanction can only be raised in the context of a party violating a Court order related to discovery. See Brandt v. Vulcan, Inc., 30 F. 3d 752, 756 (7th Cir. 1994).

## Defendant Meli's Testimony Is Not Credible Or Trustworthy Evidence

(12) Meli's testimony that he would not "change" "can" to "can't" because "can't" would not be "consistent with policy" is not credible. The position that Meli would not make a decision that violate policy is without merit.

(13) First of all, I've established, through Meli's own testimony, that he failed to follow the "policy" related to placing all documents he received from me into the "security file". See par 6-10 above.

(14) Second of all, prison investigators investigate Meli, when he was still the Security Director and found that he violated several policies related to a prisoners rights. See DKt.#122-6 Page 1; DKt.#122-7 Page 1-3. Similar to my case, Meli previous lied about what records existed on file when that inmate sought certain records to prove his innocence against the very report Meli authored (DKt.#122-1 Page 1-2) against Zachary Hayes. Specifically, the record states that "Hayes asked about the tape recordings and Mr. Meli said they were not available." See DKt.#122-3

Page 1. Prison investigators who investigated Meli's claims that the recordings were not available found such claims by Meli to be false. DKt.#122-6 Page 1-2 and DKt.#122-7 Page 1-3. Also similar (or actually identical) to my case, Meli was the conduct report writer and also determined that inmate Mr. Hayes cannot submit evidence against the disciplinary report that Meli authored. See DKt.#122-6 Page 1 & DKt.#122-7 Page 1-3. Ms. Pusich's testimony hits home when she gave testimony that (as Security Director) there would be a motive "to lie" related to omitting documents from a record. DKt.#245, Page 10-14. Inmate Hayes sought to introduce evidence into a record and Meli refused the request by lying about the record not existing. The theme is clear when Meli is the author of a disciplinary report: To make sure an inmate is found guilty Meli will lie, hide evidence and be a bias decision maker. In fact, Meli continues that ability to lie and fabricate testimony against me claiming I confessed being guilty of charges he authored against me. E.g., see DKt.#209 Par 11-17 of my Declaration & Statement of Facts.

(15) As such, Meli's testimony has no credibility and the record shows Meli's ability to manipulate the record in a way that favors his agenda "to lie" as Pusich testified.

Eliot Held's Testimony

(16) I mailed DKt.#209-4,#209-5,#209-6 to the Department Of Justice (DOJ) as a good-faith effort to bring forth the discrepancies. Mr. Held claims that he never received it. See DKt.#245 Page 91 Line 6-21. I have no evidence to the contrary.

(17) Even if Mr. Held did not receive it, no evidence has been put forth to refute that: (1) I mailed it to Mr. Held at the DOJ; or (2) the documents did arrive at the DOJ. In fact, Mr. Held testified that he cannot testify that it did not arrive at the DOJ. DKt.#245, Page 98 Line 14-17. In prisoner cases specifically, it is not unusual for a prisoner to mail a legal document out and it not reach its destination (if that's what happened herein this case where it did not reach the DOJ building). See Ray v. Clements, 700 F.3d 993, 1002 (7th Cir. 2012) (explaining that "pro se prisoners occupy a unique position in litigation. Unlike others, pro se prisoners cannot actively monitor their pending case, they cannot personally travel to the courthouse [or DOJ] to ensure that their filings have been timely received, and they cannot freely track their mailings via consistent communication with the Court [or DOJ], or enlisted mail carrier, to determine

if anything has gone awry.).

(18) What the mailings show in their content is that I had no "bad faith" in filing the documents on the Court. I even offered to withdraw the materials if there was a dispute of what I alleged took place. DKt.# 209-6 Page 3. I indicated that if I didn't hear back from Mr. Held I'd interpret that as not disputing the matter. The defendants take the position that I was wrong for stating that if Mr. Held don't object to the content I'll assume he don't dispute but, however, the defendants attorney has taken the same approach with me as it relate to attending/consenting to a deposition. See Exhibit #1 attached (Letter to me from defendants attorney Ms. Paulson where she stated to me: "Please let us know if you object to the date of that deposition; if we do not hear from you by Thursday, February 22, we will assume you do not object to that date.").

Prude's Testimony Of Events

(19) Defendants attorney Mr. Davies fires a bunch of arguments about my ability or inability to accurately and precisely remember every event that happened and exactly

the precise time frame. This matter took place almost 10 years ago, not last month. Meli's memory about events were riddled with "I don't recall" or "I can't remember" or even where he remembers talking to me at my cell but has no specific memory of what we spoke about (DKt. #245, Page 76 Line 7-16). I testified to remembering exactly what Meli and I spoke about. See DKt. #209 par 8-11 of my Declaration. The July 17, 2019 letter addressed to AAG Mr. Held corroborates it. See DKt. #209-4 through DKt #209-6. Not remembering the exact number of times Meli and I spoke does not mean my memory was not jogged by these allegations being raised which I thought were not an issue that needed to be particularly stored away in my memory bank. Meli's counsel, Mr. Davies, questioning of my memory on the number of times Meli and I spoke is undermined by the fading of memory and the passage of time. However, Mr. Davies handicaps his own argument when he fails to mention that at my deposition I made it clear that I was not sure of the exact dates because I acknowledged Mr. Davies attempt to get a definitive answer on dates that I was not sure of. It's possible that Meli and I spoke more than the times I mentioned; this all happened almost 10 years ago. I'm sure most memories are handicapped with the passage of time. Nevertheless, I never lied. My failure to recall don't somehow heighten Meli's memory lapses.

## Defendants Motion For Sanctions Invoking The Court's Inherent Authority Was Unreasonably Delayed

(20) Court's under the Seventh Circuit Court of Appeals jurisdiction has ruled that there "is no more reason for permitting an unjustified delay in submission of a sanctions motion that calls one potential source of such relief into play than where another possible source is at issue." See Northlake Marketing & Supply, Inc. v. Glaverbel, S.A., 194 F.R.D. 633, 636 (N.D. Illinois, Eastern Dist. 2000). The Court went on to hold that it: "views the timeliness issue as calling for identical treatment whatever the source of claimed sanctions may be: whether Rule 11 or Section 1927 or the **inherent powers of judiciary.** This Court finds the rationale underpinning Kaplan's timeliness standard to be equally persuasive in all three contexts, and it finds [Meli] to have failed utterly in voicing any legitimate justification (as demanded by Divane, 200 F.3d at 1027) for its delay in advancing its sanctions motion against [Prude]." (Bold emphasis and brackets added). Id. at 636. Also, see XCO Intern. Inc. v. Pacific Scientific Co., 2003 WL 2006595, at 4-5 (N.D. Illinois, Eastern Dist. 2003) (same as Northlake Marketing & Supply, Inc.).

(21) In Sullivan v. Hunt, 350 F. 3d 664 (7th Cir. 2003), the Seventh Circuit federal Court of Appeals stamped the rule of Kaplan v. Zenner, 956 F. 2d 149, 151 (7th Cir. 1992) as a "bright-line rule" when it ruled expressly that it "is well established in this Circuit that 90 days from the date of entry of final judgment represents "the outer parameters of timeliness for sanctions claims."". Id. at 666. The Court went on further ruling that "90 days from the entry of final judgment is not guaranteed to the parties; we have held that this limit "will not necessarily protect a sanctions claim if the party bringing it has failed to do so within a reasonable amount of time."". Id. at 666. This rule created by the Seventh Circuit Court of Appeals controls all forms of sanction motions. Seeing the Seventh Circuit Court of Appeals has made the "90 days from the date of entry of final judgment" the "outer parameters of timeliness for sanctions claims", and stamped the "90 days" as a "bright-line rule", it doesn't matter what type of "source" of authority is invoked to support the motion for sanctions. The "90 days" applies to the "substance" of a sanctions motion, not the "form" in which the sanctions motion is brought. This bright-line "90 days" rule is nothing new to Wisconsin federal Courts. See Wrolstad v. Cuna Mutual Insurance Society, 2017 WL 3130438, at 2 (W.D. Wis. 2017) ("90 days" rule relied upon).

## Defendants Admit That Their Motion For Sanctions Is, In Fact, Unreasonably Delayed

(22) Defendant's opening brief is void of any untimely defenses.

In the defendant's unrelated brief (DKt. #221), they argue merely that they "should have been more wary from the start of relying on Prude's attestation that his exhibits were authentic. Regardless, **the delay** in Defendants discovery proof of Prude fabricating documents does not warrant overlooking Prude's inexcusable abuse of the judicial system". DKt. 221, Page 3. The documents in the case were not fabricated. Nevertheless, the defendants believe the documents are fabricated and they admit that since year 2016-2017 they've been in possession of the evidence (since those years) that triggered the very basis of their motion for sanctions filed in February of this year (2024). See DKt. #249, Page 2-6. All these records were in the exclusive possession of defendants while, at the same time, they were aware the documents I filed upon the court that they're calling "fabricated documents". These records were located in the "security file" which, as Security Director, Meli had full control and access to. See DKt. #249, Page 2-6. More importantly, prior to this case being dismissed on 4/27/2020, Meli and his attorney reviewed the substance of

the documents attached to the Civil Complaint (Dkt. 1-1) and according to Meli evidentiary hearing testimony he Knew, from looking at these alleged "fabricated documents", that he allegedly did not author them. If true, Meli was aware of these very same subjective beliefs about these documents (back in 2016-2020). Dkt.#245, Page 66 Line 2-20; & Also, see Page 8 Line 3 through to Page 12 Line 20.

(23) DISCOVERY: Defendants word-play indicates that they feel that because they came to understand the discrepancies between the documents (that they've possessed since December of 2016) that their 7 years and 6 month delay should be excused. Case law doesn't support such reasons for this type of delay. In Long v. Howard University, 561 F. Supp. 2d 85 (Dist. of Columbia, 2008), the Court did not buy the same reasons Meli invokes. The plaintiff was in possession of "Table 1" but failed to file a sanction motion based on such document he possessed for "over three years". Id. at 91.

(24) OUTER PARAMETERS: This case was dismiss 4/27/2020. See DKt.#132. The defendants had "90 days from the date of entry of final judgment" to file their motion for sanctions. Meaning, they had until July 26, 2020 to file the motion for sanctions under Sullivan v. Hunt's 90 day bright-line rule. Thus,

the defendants claim that they didn't "discover" the "fraud" in their own records (they possessed for 7 1/2 years) is not a justifiable reason to circumvent the 7th Circuit Court of Appeals "90 days" bright-line rule.

(25) In fact, the defendants reason that they gave for why their untimeliness in filing such motion should be excused is because of my alleged "...inexcusable abuse of the judicial system.". See DKt. #221, Page 3. Any alleged "inexcusable abuse of the judicial system" motions for sanctions must be timely made no later than "90 days" from the April 27, 2020 entry of final judgment (DKt. #132). Sullivan v. Hunt, Id. at 666; and see Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago, 649 F.3d 539, 553 (7th Cir. 2011) ("Finally, we have recognized that the "outer parameters" for filing motions for sanctions after final judgment is 90 days.").

(26) This is not a case where I turned over discovery to defendants that spotlighted defendants allegations of "fabricated documents". Nor is this a case where the alleged "fabricated documents" were recently filed upon the Court. Defendants admit these points. In fact, the defendants filed an "answer" to the civil complaint allegations (and these alleged "fabricated documents")

denying that they are true. See DKt.#53, par 50-51. These denials were pursuant to Fed. R. Civ. P. Rule 8(b)(5) which allowed Meli to claim he "lacks Knowledge or information sufficient to form a belief about the truth of an allegation". According to Meli's deposition and evidentiary hearing testimony, this Rule 8(b)(5) defense was a sham defense seeing the information in the complaint and alleged "fabricated documents" (attached to the complaint) were, in fact, **within Meli's direct Knowledge.** The allegations in the Complaint (DKt.#1, par 50-51) alleged that Meli made and wrote certain remarks (and that he made the answers in response to what I wrote to him) on the document at DKt.#1-1, Page 5. A denial "must fairly respond to the substance of the allegation" under Rule 8(b)(2). A mere review of the document itself, and a review of the original document in the "security file", without any doubt placed Meli in a position to be frank with a admission or a denial. The 7th Circuit Court of Appeals has expressly required these type of "sham" claims of reliance on Rule 8(b)(5) be deemed as admissions. In American Photocopy Equipment Co. v. Rovico, Inc., 359 F.2d 745 (7th Cir. 1966), the Court held: "We hold that, in view of the existing circumstances, this failure of plaintiff to frankly reply on a matter, which it, as patent owner and manufacturer must had within its Knowledge, exhibits a lack of fairness

which completely discredits its statement that it is without knowledge of or information sufficient to form a belief as to the truth of said averment of defendant." Id. at 746-47. The Court further held: "Under comparable provisions of the Federal Rules of Civil Procedure, an answer asserting want of knowledge sufficient to form a belief as to the truth of facts alleged in a complaint does not serve as a denial if the assertion of ignorance is obviously sham. In such circumstances the facts alleged in the complaint stand admitted." Id. at 747. (internal citations omitted).

(27) Had Meli not provided an "obviously sham" denial these matters could have been resolved back in January of 2019 when Meli filed his answers at DKt.#53, par 50-51. Meli cannot now claim the allegations/documents are now false after originally claiming he "lack sufficient knowledge or information to form a belief as to the truth of the allegations contained therein" (DKt.#53, par 50-51). Meli must be deemed to have either admitted the assertions in the complaint or be deemed to have waived raising an objection to the information. Meli's motion for sanctions based on information he was aware of in 2019 must be denied as being utterly untimely. Meli first discovered these documents along with the allegations in the

civil complaint (DKt.#1, par 50-51) when filed his "answer" (DKt#53, par 50-51).

Defendants Waived The Opportunity To Explain The Reasons Why Their Untimely Motion For Sanctions Should Be Excused

(28) In the defendants opening brief (DKt.#249, page 2-6) they did not utter a single word whatsoever of any reason to justify the untimeliness of their motion for sanctions. It is anticipated that defendants may attempt to use their "reply brief" to start the engine for trying to provide an excused for the unreasonable delay for filing their motion for sanctions. However, that "engine" (i.e. argument) should have been started in its opening brief. New arguments made in a "reply brief", that were omitted from the "opening brief", are waived. United States v. Vitrano, 747 F.3d 922, 925 (7th Cir. 2014).

Can Invoking The Court's "Inherent Authority" By A Party Be Untimely?

(29) The answer is yes. Chambers v. NASCO, Inc.,

501 U.S. 32(1991) does not, and has never, stood for the proposition that when a party motions the court for sanctions invoking the courts "inherent authority" that such motion can be untimely. **No court** in the United States of America, certainly not the Seventh Circuit Court of Appeals, has held that the mere invoking of the Court's "inherent authority" by a party bringing a sanctions motion can never be untimely. In fact, the court in Sullivan v. Hunt, Id. at 666 has created a rule establishing when a motion of sanctions is always untimely under its bright-line "90 days" rule. Additionally, the "inherent authority" to sanction conduct or sanctioning conduct under Rule 11 or sanctioning conduct under any other "source" is merely as magistrate judge Crocker said at the April 22, 2024 evidentiary hearing: "...old wine in a new bottle". DKt.#245, Page 72 Line 9. Thus, "under Rule 11 [and when a party invokes the court's inherent authority] a party must file a motion for sanctions within a reasonable time after the party knows **or should have** known of the basis for his or her sanctions motion." Kaplan v. Zenner, 956 F. 2d 149, 150 (7th Cir. 1992). Every motion for sanctions regardless of the source of authority must be timely. Northlake Marketing & Supply, Inc. v. Glaverbel, S.A., Id. at 636. As such, defendant motion for sanctions must denied. Thank you. Terrance Prude / Terrance Prude / 6-2-2024

# Exhibit #19

- 31-Pages (Pages 1-29 Single Sided and Pages 30-31 Double Sided)

Western District Court [Docket#290]

Plaintiff: Terrance Prude,
-vs- Case#17-CV-336
Defendants: Anthony Meli, et al..

# Plaintiff Motion To Vacate All Magistrate Judge Crocker's Rulings Pursuant To Fed. R. Civ. P. Rule 60(b)(4) & 59(e)

I, Terrance Prude, move this court to vacate all magistrate Crocker's rulings on this case that took place after the Seventh Circuit Court of Appeals remand order at DKt.#179. This motion invokes Fed. R. Civ. P. Rule 60(b)(4) because all decisions issued by magistrate Crocker after DKt.#179 are void due to lack of jurisdiction. In grounds in support, I hereby assert the following facts:

## Article 3 Judge Conley

(1) I filed this case on May 5, 2017. See DKt.#1. This case was assigned to William M. Conley who is an Article 3 judge with jurisdiction over this case

Case 2:25-cv-01083-WED Filed 07/24/25 Page 96 of 136 Document 1-1

under the U.S. Constitution. See generally Wellness Intern. Network, Ltd. v. Sharif, 575 U.S. 665 (2015).

Non-Article 3 Magistrate Judge Stephen L. Crocker

(2) On 9-28-2018, I, along with the defendants, consented to allowing non-article 3 magistrate judge Crocker to acquire jurisdiction to preside over this case pursuant to 28 U.S.C. 636(c)(1). See DKt.#32-#33.

(3) On 10-2-2018, pursuant to the parties consents, Article 3 judge Conley issued an order referring this case to magistrate judge Crocker. See DKt.#34. From this point until 4-27-2020 (DKt.#132), at the earliest, and 2-9-2021 (DKt.#151), at the very latest, magistrate Crocker retained jurisdiction over this case pursuant to the parties consenting.

Article 3 Judge's Scudder, St. Eve and Lee

(4) After magistrate Crocker issued his entry of judgment (DKt.#151) and I filed my notice of appeal to the Seventh Circuit Court of Appeals (DKt.#152),

magistrate Crocker's tenure ended and the parties consents (DKt.#32-#33) expired. Filing the notice of appeal transferred jurisdiction to the Seventh Circuit Court of Appeals. See Kusay v. U.S., 62 F.3d 192, at 194 (7th Cir. 1995) ("...the notice of appeal transfers jurisdiction to the court of appeals...").

(5) From 2-22-2021 (DKt.#152) until 8-29-2023 (DKt.#179) the Seventh Circuit Court of Appeals possessed jurisdiction over this case. The Seventh Circuit Court of Appeals remand mandate returned the case back to the Western District Court of Wisconsin.

Non-Article 3 Magistrate Judge Stephen L. Crocker

(6) After the remand, this case was required to be returned to the Article 3 judge Conley. Instead, however, this case was taken over by non-Article 3 magistrate judge Crocker. See DKt.#184.

(7) None of the parties signed "new consents" and Judge Conley did not issue a "new referral order". Despite these omissions, magistrate judge Crocker

0

improperly vested himself with the judicial power of the United States in violation of both 636(c) and Article 3 of the United States Constitution. See Coleman v. Labor and Industry Review Commission of Wisconsin, 860 F.3d 461, 466 (7th Cir. 2017) ("Valid consent is not optional; it is essential to upholding 636(c)'s constitutionality against arguments that it improperly vests the judicial power of the United States in non-Article III judges.") (internal quotation marks omitted).

28 U.S.C. 636(c)(1)-(3)
Is Unconstitutional As Applied[1]
To The Facts Of This Case

(8) NEW CONSENT REQUIRED: A "new consent" to have Magistrate judge Crocker preside over this case in order to issue another, separate, judgment under 636(c)(1)-(3) is mandatory. See Lopez v. Holder, 563 F.3d 107, 111 (5th Cir. 2009) ("The crux of the petitioners' argument is that the transferred proceeding was new and

---

[1] The standards for proving a statute unconstitutional "as applied" to the facts of a particular case is well established. See United States v. Phillips, 645 F.3d 859, 863 (7th Cir. 2011) (explaining "as applied" standard of review).

distinct from the original habeas proceeding; thus, a new consent and referral order was required. We agree.").

(9) The parties consents (i.e. Dkt. #32 & #33) are tantamount to a contractual agreement (see Archie v. Christian, 808 F.2d 1132, at 1134 n.2 (5th Cir. 1987) (calling it a "matter of contract" when parties consent to a magistrate judge)), where the "terms" of magistrate Crocker's tenure to preside over this case is laid out in 636(c)(1)-(3). The Seventh Circuit Court of Appeals remand order (Dkt. #179) did not extend the parties consents beyond the terms laid out in Dkt. #32 & #33 & 636(c)(1)-(3). After remand, magistrate Crocker decided on his own to improperly put himself back on this case presumably to seek revenge because I managed to have his bogus decisions reversed and he sought to find a new way to rule against me. Whatever the case, Crocker knew that in order to preside over this case again required a "new consent" and a "new referral order" under 636(c)(1).

(10) In Parks By and Through Parks v. Collins, 761 F.2d 1101 (5th Cir. 1985), a case factually similar to the facts of this case herein, that court held that the magistrate had jurisdiction over the "original action" under 28 U.S.C. 636(c). But, however, the court ruled that the magistrate did not have jurisdiction to preside over "the Rule 60(b)"

motions because none of the parties consented. Id. at 1105-06. The Court stated that "the parties apparently assumed that the magistrate's jurisdiction over the original action reached as well to the garnishment action." Id. at 1105. In my case, maybe the magistrate (and all parties) assumed that the magistrate's jurisdiction over the "original action" reached as well to the second action after remand. This mental assumption was flat wrong. These proceedings after remand required, again, a consent by all parties and an order of reference from Article 3 judge Conley under 636(c)(1). This did not take place. This same omission formed the ruling in Park's. Id. at 1106 ("First, fatal to the magistrate's exercise of authority is the lack of any order of reference from the district judge." and "Second, even if the motions had been properly referred to the magistrate, we find no indication that the parties to the garnishment action consented to have the magistrate rule on the 60(b) motions.").

(11) Also, in the Parks case, originally the case was in the jurisdiction of the Article 3 judge. The parties consented to a magistrate subsequently under 636 (c)(1) and the case moved forward to an entry of judgment presided over by the authorized magistrate. Id. at 1103. The Article 3 district judge (after the

Case 2:25-cv-01083-WED Filed 07/24/25 Page 101 of 136 Document 1-1

magistrate tenure under 636(c)'s terms ended) issued a "default judgment" against defendants because defendants failed to file a answer to the "writ of garnishment within the requisite twenty-day period." Id. at 1103. On "January 18" the defendant filed a Rule 60(b) motion to set aside the "default judgment" entered by the Article 3 district judge. The magistrate judge, not the Article 3 district judge, entered an order setting aside the "default judgment." Id. In sum, the case started with an Article 3 district judge and then went to a magistrate judge properly under 636(c)(1) and back to an Article 3 district judge and then, again, back to the magistrate judge. Id. at 1103. When the magistrate judge took control of the case the second time is the "act" that created the jurisdictional defect because the case was not referred to the magistrate by an Article 3 district judge and nor did the parties consent to the magistrate judge having a second tenure under 636(c)(1). Id. at 1103-06.

(12) The same sequence happened herein my case. My case started with Article 3 judge Conley. Then, all parties consented to magistrate Crocker (DKt. #32-#33), and Article 3 judge Conley referred the case to magistrate Crocker (DKt. #34). After magistrate Crocker's tenue ended (DKt. #151), my case reverted back to Article 3

judges (i.e. the Seventh Circuit Court of Appeals judges Scudder, St. Eve, and Lee). Then, when the Seventh Circuit Court of Appeals issued its remand order (Dkt.#179), magistrate Crocker took control of this case a second time but this time without a referral order or parties consent. Even the Seventh Circuit Court of Appeals in King v. Ionization Intern, Inc., 825 F.2d 1180, at 1186 (7th Cir. 1987) cited the Parks decision calling the jurisdictional defects "graver" than the issues it was addressing in King. Id. There's no dispute that after the remand order (Dkt.#179) the parties did not consent (nor even offered the chance to refuse) magistrate Crocker's possession of this case and there's no dispute that there was never a referral order. Without these two factors (i.e. party consent & referral order), magistrate Crocker involved himself in a "clear usurpation of judicial power, where the [magistrate judge Crocker] wrongfully extend[ed] [his] jurisdiction beyond the scope of [his] authority." See U.S. v. Tittjung, 235 F.3d 330, 335 (7th Cir. 2000). Magistrate Crocker has been conducting himself as a Article 3 judge. This is "egregious" and makes 636(c)(1)-(3) unconstitutional "as applied" to the facts of this case which voids every decision made by Crocker after remand pursuant to Rule 60(b)(4). See Burton v. Schamp, 25 F.4th 198, at 205 (3rd Cir. 2022) ("...the

magistrate judge could acquire jurisdiction to decide the case only by the consent of the parties. ... If the requirements of Section 636(c)(1) are not satisfied, the "magistrate judge [is deprived] of jurisdiction over the case".")).

Once An Article 3 Judge Take Jurisdiction Over A Case The Magistrate Judge Jurisdiction Has Ended

(13) Just as 636(c)(1)-(2) and Rule 73(b)(1) transfers jurisdiction to a magistrate judge, 636(c)(3) and Rule 73(c) transfers jurisdiction back to a Article 3 judge.

(14) For instance, 636(c)(3) mandates that "an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge...". The language is authorizing "an aggrieved party" to transfer jurisdiction to Article 3 judges (i.e. the "United States court of appeals" are only Article 3 judges).

(15) Equally, Rule 73(c) mandates that "an appeal from a judgment entered at a magistrate judge's direction may be taken to the court of appeals...". This language, too, is



authorizing an aggrieved party to transfer jurisdiction to Article 3 judges (i.e. the "court of appeals" are only Article 3 judges). If "an aggrieved party" invokes the right to have the case transferred to a "court of appeals", the magistrate does not retain jurisdiction.

(16) For instance, Article 3 gives subject matter jurisdiction to the U.S. Supreme Court and in "such inferior Courts"[2] (i.e. U.S. Court of Appeals and U.S. District Courts). When I filed the notice of appeal[3], that act placed this case inside of Article 3's confinement and it eliminated magistrate Crocker's jurisdiction under 636(c)(1). The Court of Appeals remand order[4] was an order that returned jurisdiction back to the District Court, not the magistrate judge. See Kusay v. U.S., 62 F.3d 192, at 194 (7th Cir. 1995) ("Just as the notice of appeal transfers jurisdiction to the court of appeals, so the mandate returns it to the district court.").

(17) One may be urgent to argue that a remand

---

[2] See "Article III. The Judiciary", at Section 1.
[3] See DKt. #152.
[4] See DKt. #179.



order (from an Article 3 judge) is merely referring the case back to magistrate Crocker's jurisdiction, which is effectively an argument that the "remand order" was a "de facto referral order" under 636(c)(1) like the one Article 3 judge Conley issued. See DKt.#34. Even accepting that reasoning that the remand order was the functional equivalent of DKt.#34, none of the parties consented. Jurisdiction attaches only through consent, not referral.

## What Did The Parties To This Case Consent To?

(18) As explained previously, the parties consents are tantamount to a "contractual agreement". See above at par 9. To understand the parameters and boundaries of the parties consents, it is single handedly important to review the language of the "contract" in order to figure out what the parties understanding was. For this, we are guided by the laws governing contract principles. In the case of a written contract (as is the case here), "the parties' intent is determined by looking first to the plain and ordinary meaning of the contract language." See BKCAP, LLC v. CAPTEC Franchise Trust 2000-1, 572 F.3d 353, at 359 (7th Cir. 2009). If "the contract language is clear and unambiguous, the

document is interpreted as a matter of law without looking to extrinsic evidence." Id. at 359.

(19) Under statute 636(c)(1), which effectuates what the parties are consenting to, the parties clearly understood that the magistrate would "conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case". This language addresses consenting to a magistrate to conduct "any or all proceedings" that came **before** "order[ing] the entry of judgment in the case". The parties consented to allowing magistrate Crocker to "conduct any or all proceedings" leading up to "the entry of judgment." The "entry of judgment" was imposed on 2-9-2021 (DKt.#151). After magistrate Crocker issued the 2-9-2021 order, that act concluded Crocker's jurisdiction[5] over the case. The statute does not directly or indirectly allow a magistrate judge to automatically regain jurisdiction (without a referral order and without the parties consent) when Article 3 judges (from the Court of Appeals) issue a remand order.[6] The statute clearly limits a magistrate judge's jurisdiction of a case to "all proceedings" conducted prior to filing a notice of appeal,

---

[5] Magistrate Crocker's tenue certainly was over when I filed the notice of appeal. See DKt.#152.

[6] See DKt#179.

not beyond. See 636(c)(3)("Upon entry of judgment in any case referred under paragraph (1) of this subsection, an aggrieved party may appeal directly to the appropriate United States court of appeals from the judgment of the magistrate judge..."). In fact, the statute does not even address a magistrate judge's jurisdiction after Article 3 court of appeals judges issue a remand order. Thus, 636(c)'s jurisdiction is obviously confined to matters prior to filing a notice of appeal. If Congress intended more, it would have expressly done so.

(20) The language "conduct any or all proceedings", under 28 U.S.C. 636(c)(1), must be limited to proceedings that lead up to entry of judgment.[6A] Any other interpretation would "have the troubling result that a party before a magistrate judge would be unable to petition an Article III judge for review. Such an arrangement would raise significant constitutional difficulties, as it would appear to lack the requisite supervision by an Article III officer". See Branch v. Umphenour, 936 F.3d 994, at 1003 (9th Cir. 2019). The language "conduct any or all proceedings" would unreasonably apply to the court of appeals.

6A Another exception to a magistrate's jurisdiction under 636(c)(1)-(3) is that a magistrate doesn't have the jurisdictional power to vacate such reference. See 636(c)(4); 73(b)(3).

## How Did Prude Discover That Magistrate Judge Crocker Lacked Jurisdiction Of This Case?

(21) Due to the decisions and the actions and words that magistrate Crocker has taken/made in this case towards me in his orders and at depositions that exhibited his personal bias/prejudices against me made me begin to research how to file a state or federal civil action against magistrate Crocker.

(22) I came across the United States Supreme Court decision Mireles v. Waco, 502 U.S. 9 (1991) which articulated the standard on how to sue a judge who generally has absolute immunity. The Court held that such standard is: (1) "First, a judge is not immune from liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity"; and (2) "Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction". See Mireles v. Waco, 502 U.S. at 11; 112 S.Ct. at 288. It is the second-element that caused me to look into magistrate Crocker's jurisdiction under 636(c)'s confinement in order to figured out if Crocker lacked "all jurisdiction". I

concluded that magistrate Crocker did lack "all jurisdiction" after DKt.#152 and certainly prior to and after DKt.#179. This confirmed to me that I can sue magistrate Crocker due to him deliberately depriving me of my constitutional right to an Article 3 judge after the remand order, and amongst other rights magistrate Crocker intentionally violated.[7] Due to magistrate Crocker lacking all jurisdiction to preside over my case, the rulings that magistrate Crocker issued prejudiced me.

## The Clerk Failed To Comply With Federal Law Related To The Parties Right To Decline Or Accept A Magistrate

(23) First, after this case was remanded from the Court of Appeals the Clerk should have notified the parties of their/our right to an Article 3 judge or our right to waive Article 3 jurisdiction for magistrate jurisdiction. Federal Rules of Civil Procedure (FRCP) Rule 73(b)(1) explains that the "clerk must give the parties

[7] A civil complaint is currently being drafted by me in a civil case against magistrate Crocker. Thus, I will not delve into those facts in this motion.

written notice of their opportunity to consent under 28 U.S.C. 636(c). To signify their consent, the parties must jointly or separately file a statement consenting to the referral." Further, after the court of appeals remand order the "district judge, magistrate judge, or other court official may remind the parties of the magistrate judge's availability, but must also advise them that they are free to without consent without adverse substantive consequences." See FRCP Rule 73(b)(2).

(24) None of this took place. Instead, magistrate Crocker hijacked jurisdiction over this case.

A Magistrate Judge's Jurisdiction Had Been Held To Extend No Further Than A Rule 60(b) Motion

(25) "A magistrate judge who enters by consent a final judgment in a civil litigation also has authority to dispose of postjudgment motions in the same litigation. This authority extends to motions under Federal Rule of Civil Procedure 60(b)." See Jones v. Association of Flight Attendants-CWA, 778 F.3d 571, at 573 (7th Cir. 2015) (case citations omitted from the quotes). It's clear that a magistrates jurisdiction extends no farther than a Rule 60(b) motion. It would be absurd to hold that

a magistrates jurisdiction continues even when the case goes in front of court of appeals Article 3 judges.

(26) The notice of appeal (DKt.#152) did several things that made this case a "new" case: (1) it gave this case a new case number; (2) I had to pay a separate filing fee; (3) it triggered Article 3 judges jurisdiction and extinguishing any and all magistrate jurisdiction over this case. Thus, it cannot reasonably be thought that the parties consents (DKt.#32 and #33) and the Article 3 judge's referral order (DKt.#34) applied after DKt.#152 and DKt.#179. "Once the [magistrate] judge saw that [Prude's] [remand decision] was not part of the litigation covered by the parties consents, he should have recognized that he did not have authority to issue a dispositive ruling,... [Prude] was bringing a new lawsuit. The magistrate judge could dispose of that new action only if it was assigned to him by a district judge and the parties furnished new consents." See Jones v. Association of Flight Attendants-CWA, Id. at 574.

## Other Jurisdictional Issues Related To Magistrate Crocker Presiding Over This Case

(27) On 10-2-2024, I file a Motion for Writ of Execution Under Fed. R. Civ. Procedure Rule 69 and Rule 70

and Rule 71. See DKt.#273. Such motion sought to enforce judgment against a nonparty (i.e. Peter Barca, the Secretary of the department of revenue). See Page 7-9 of DKt.#273. Magistrate judge Crocker denied this motion stating that I have "no claim to the funds seized by the state, and he is not entitled to provide input regarding the disposition of those funds.". See DKt.#274. Putting aside the audacity of Magistrate Crocker's view that my funds can be seized and that I'm "not entitled to provide input"[8], magistrate Crocker did not have any jurisdiction to preside over this motion (i.e. DKt.#273) because it, too, was a "new case" by seeking to enforce judgment against a nonparty (i.e. Peter W. Barca). Magistrate Crocker's jurisdiction always only applied to the consenting defendants. See DKt.#33. Also, the Seventh Circuit Court of Appeals has also held that when a Rule 69 motion is brought to be enforced against a nonparty on the underlining case, "ancillary jurisdiction does not extend over new lawsuits to enforce an existing judgment against a party not already bound to that jurisdiction". See Boim v. American Muslims for Palestine, 9 F.4th 545, at 554 (7th Cir. 2021). Crocker at that point, also, should have known that he lacked

8 How this ruling is unlawful will be explained in the civil complaint I'm currently drafting against magistrate Crocker. I will not delve into those facts here.

jurisdiction to preside over such action. This is merely another act that show magistrate Crocker hijacked his way over this case after remand. When I filed the motion (DKt.#273), Article 3 judge Conley, not magistrate Crocker, should have presided over this garnishment[9] proceeding. See McCoy v. Lafaut, 813 F. Supp. 1508, at 1511 (U.S. Dist. Ct., D. Kansas, 2-12-1993) ("Once the magistrate had entered judgment in the matter, however, his special designation was at an end.")[10].

(28) 28 U.S.C. 636(b)-(c) sets boundaries upon a magistrate judges capacity (i.e. power). For instance, 636(b) does not allow a magistrate judge to make dispositive rulings on a case, only recommendations to a district judge. 636(c), however, allows the parties to consent to a magistrate judge to make dispositive rulings. It's dire to understand that the language allowing a magistrate to "conduct any or all proceedings" comes **before** the language "the entry of judgment". It is the "proceedings" leading up to "the entry of judgment" are what the "any and all" applies to. If Congress intended otherwise it would have worded the statute in the reverse, i.e. allowing

[9] The motion sought to garnish funds from the Wisconsin Department of Revenue. See DKt.#273, Par 10.

[10] This also goes to the argument that Crocker's "special designation" under 636(c) ended at DKt.#151.

a magistrate to impose "the entry of judgment [and to conduct any or all [further] proceedings". This would clearly effectuate that Congress intended a magistrate's jurisdiction to extend beyond "the entry of judgment". But this is not what Congress effectuated." The Seventh Circuit Court of Appeals has understandably held that a magistrate's jurisdiction extends to a "Rule 60(b)" motion. See above at par 25. Naturally, a rule 60(b) motion reverts back to the magistrates final entry of judgment previously imposed.

## Federal Filing Ban And Jurisdictional Defect

(29) Ironically, despite magistrate Crocker not having jurisdiction over this case after remand, he refused to impose a "federal filing ban" in his ruling because he believed he did not have jurisdiction over this case to do so. See DKt. #260, Page 31 at "(4)". This recognition of lacking jurisdiction

---

" There's already a popular debate about whether article 3 is violated by 636(c) by even allowing a magistrate judge to impose "the entry of judgment" under 636(c). See generally Geras v. Lafayette Display Fixtures, Inc., 742 F.2d 1037 (7th Cir. 1984). Magistrate Crocker has done much more in this case.

to impose a "federal filing ban" does not seem to jive with a magistrates powers under 636(c). Magistrate Crocker believed in what he said nevertheless, ironically.

(30) The AAG Davies filed a Rule 59(e) motion seeking a favor from Crocker to hand this case over to judge Peterson for a filing ban. See DKt.# 264, Page 21 at Footnote 4. Again, Crocker refused but this time directed AAG Davies to attack Prude from a different angle in pursuant of a "filing ban". That angle was aimed at a separate civil case I had in the Western District Court, Prude v. Sarah Cooper, # 24-CV-338. See DKt.# 266, Page 1 ("The AGO is free to seek a litigation bar from the chief judge in that case, citing to the August 19, 2024 order in this case.").[12]

(31) Recognizing the plotting amongst AAG Davies, magistrate Crocker and judge Peterson, I voluntarily moved to dismiss the Prude v. Cooper case under Rule 41(a)(1)(A)(i) because I Knew that a voluntary dismissal (before the complaint was even screened)

---

[12] This suggest Crocker was in talks with Chief Judge Peterson about how to accomplish the goal of a filing ban without handing this case over to judge Peterson. Crocker denied Davies request of "recommending" (presumably under 636(b)(1)

Case 2:25-cv-01083-WED Filed 07/24/25 Page 116 of 136 Document 1-1



would instantly deprive the court of subject matter jurisdiction.[13] The Clerk dismissed the case pursuant to my Rule 41(a)(1)(A)(i) motion.

(32) Despite jurisdiction of the Prude v. Cooper #24-CV-338 being absent, judge Peterson chose to issue a "filing ban" by adopting magistrate Crocker's "findings" from DKt. #260 in this case. See Peterson's October 25, 2024 order attached marked Exhibit #1. Seeing the only case Peterson's jurisdiction could be attached or extended to is this case (because Rule 41(a)(1)(A)(i) deprived Peterson jurisdiction of the "24-CV-338" case), Peterson was the de facto judge on this case for the sole purpose of issuing the "filing ban". Like magistrate judge Crocker, judge Peterson has now opened himself up to being subject to the same lawsuit I'm drafting against Crocker due to Peterson, too, lacking all jurisdiction of the "24-CV-338" case after I voluntarily dismissed it. Judge Peterson's October 25, 2024 order (from

---

(C)) a filing ban to judge Peterson.

13 See McCall-Bey v. Franzen, 777 F.2d 1178, at 11 (7th Cir. 1985) (explaining how a voluntary dismissal under Rule 41(a)(1)(A)(i) deprives court of jurisdiction to subsequently make any rulings on that case).

"24-CV-338") was nothing more than a nullity of itself because Peterson, in that moment, was a powerless robe because he had no jurisdiction over case "24-CV-338". McCall-Bey v. Franzen, 777 F.2d 1178, at 11 (7th Cir. 1985) ("An unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by Rule 60(b)."). Also see Nelson v. Napolitano, 657 F.3d 586, 587 (7th Cir. 2011) ("A suit that is voluntarily dismissed under Rule 41(a) generally is treated as if it had never been filed."); U.S. v. Mt. Vernon Memorial Estates, Inc., 734 F.2d 1230, at 1236 (7th Cir. 1984) ("...a voluntary dismissal turns back the clock; it is as if the plaintiff's lawsuit had never been brought."). In effect, judge Peterson's ruling[14] was actually a "straw-ruling" on this case, i.e. Peterson used a case he had no jurisdiction over as a tactical means of being a de fact presiding judge over this case. No wonder respect for the judicial system and those who wear the black robes has been greatly torched. The actions of a few judges can harm the image of all judges (even the good ones) in the eyes of persons who distrust the judicial system as a whole.[14A]

---

[14] Meaning, from the "24-CV-338" case.
[14A] Crocker & Peterson felt I did something wrong, so they did something wrong.

(33) Judge Peterson's "straw-ruling" effectively made him the presiding judge over this case. That act (i.e. Peterson's "straw-ruling") created a grave jurisdictional error on top of the jurisdictional errors made by Crocker by presiding over this case. It's hoped that Crocker does not preside over this motion prior to me appealing to the Court of Appeals.

After Peterson's "Straw-Ruling" Upon This Case, Magistrate Crocker Issued The Final Rulings On This Case

(34) To be clear, I am not "artfully" making an figment argument that magistrate Crocker and chief judge Peterson collectively sought to have a "filing ban" put in place through a "straw-ruling". Crocker himself expressly gave AAG Davies legal advice effectuating how to obtain a "straw-ruling" from Peterson on the merits of this case. See DKt. #266, Page 1 ("Prude certainly deserves a litigation bar, but "recommending" to Chief Judge Peterson that he impose such a bar unnecessary prolongs and complicates a case that is already closed. Prude's lawsuits in this court currently are being assigned to Chief Judge Peterson. See, e.g., Prude v. Cooper, 24-cv-338-jdp. The AGO is free to seek a litigation bar from the chief judge in that case,

citing to the August 19, 2024 order in this case."). In direct response, I invoked Rule 41(a)(1)(A)(i) because I Knew it would deprive jurisdiction.[15] Judge Peterson not caring about lacking jurisdiction, issued his "straw-ruling" in his October 25, 2024 order. See Exhibit #1, Page 2 attached ("Magistrate Judge Crocker lays out in detail the egregious nature of Prude's misconduct; I incorporate his finds into this order."). Undoubtedly, that ruling was not a ruling affecting the "24-cv-338" case (because the Rule 41(a)(1)(A)(i) motion vacated the court's subject matter jurisdiction), it was a "straw-ruling" for this case in its entirety.

(35) On the heels of Peterson's "straw-ruling", magistrate Crocker imposed rulings related to defendants motion for attorney fees and other costs. See DKt. #288. Magistrate Crocker still didn't have any jurisdiction over this case as stated above at par 1-7. This act, too, supports the above arguments at par 8-17.

---

[15] Flash back: The AAG Mr. Davies motion requesting Crocker to give this case to Peterson for a "filing ban" was the functional equivalent of a motion to vacate the reference order at DKt. #34. See DKt. #264, Page 21 at Footnote 4. Crocker denied the defendants request. See DKt. #266, Page 1. Crocker had no jurisdiction to hear that subject either. See 636(c)(4); 73(b)(3).



# Plaintiff Terrance Prude's 59(e) Motion To Amend/Alter This Court's Rulings

(36) On November 21, 2024[16], magistrate Crocker ruled in defendants favor on attorney fees. This ruling was in error for all the following reasons:

(A) This Court erroneously ruled that defendants Rule 59(e) motion[17] tolled the "14 days" (under Rule 54(d)(2)(B)(i)) even though the time limit expired before the Rule 59(e) motion was filed. Magistrate Crocker tactically cited federal cases from other jurisdictions to support the ruling in defendants favor while tactically ignoring the federal cases within the Seventh Circuit Court of Appeals jurisdiction. The one Seventh Circuit Court of Appeals case the court magistrate did cite to was actually favorable to my defense that the defendants attorney-fees-Rule 54-motion was untimely. This Court erroneously cited Borrero v. City of Chi., 456 F.3d 698, 699-700 (7th Cir. 2006) for the view that the "59(e) motion suspended the finality of the August 2024 judgment, so that defendants were not required to file a motion for

[16] See DKt.#288.
[17] See DKt.#275.



attorney's fees before resolution of their Rule 59(e) motion."[18] See DKt. #288, Page 4. In Borrero, the Court's entire analysis was focused on the fact that the timely 59(e) motion was filed **before** the notice of appeal timelimits expired which caused the notice of appeal timelimits to be tolled/suspended. The Court stated: "A motion to alter or amend a judgment is deemed filed under Rule 59(e) of the civil rules, which tolls the time for filing an appeal from the judgment, **if the motion is filed within [28] days after entry of the judgment...**". Id. at 699 (bold emphasis added). The only reason the timelimits to file the notice of appeal was tolled was solely because the 59(e) motion was filed prior to the 30 days to file a notice of appeal expired. Had the defendants in this case filed the 59(e) motion before the "14 days" (under Rule 54(d)(2)(B)(i)) expired then this court citing Borrero v. City of Chi. would make sense. The Borrero case does not support magistrate Crocker's decision. This is the first reason Crocker was wrong.

---

18 The magistrate Crocker was using the "tolling" context of the "notice of appeal" timelimits in connection with a 59(e) motion as a comparison with the attorney fees motion timelimits in connection with the 59(e) motion defendants filed. This was the reason the Court cited Borrero v. City of Chi., 456 F.3d 698 (7th Cir. 2006).

(B) The Second reason the Court was wrong for assuming the 14 days-attorney-fees-motion was tolled (after it had already expired) by the 59(e) motion is because F.R.C.P. Rule 6(b)(1)(A)-(B) explains how an untimely motion can be excused, which the defendant did not exhaust. See Ardisam, Inc. v. Ameristep, Inc., 343 F. Supp. 2d 726, 729-31 (W.D. Wis. 2004). And as explained above, the Seventh Circuit only permits a Rule 59(e) motion to toll time limits that has **not** expired. Borrero v. City of Chi., Id. at 699-700. Stated differently, filing the 59(e) motion did not revive[19] the 14 day time limit under Rule 54(d)(2)(B)(i). The Seventh Circuit's jurisprudence does not adopt the analysis that this Court has adopted. See Magistrate Cracker's 11-21-2024 decision at DKt. #288, Page 4-5.

(C) The Third reason the Court was wrong is because the defendants 59(e) motion did not restart the attorney-fee 14 day time limit because the court's ruling on the 59(e) motion did not "change[] matters of substance, or resolves a genuine ambiguity, in a judgment previously rendered." See Charles v. Daley, 799 F. 2d 343, 348 (7th Cir. 1986). This Court's

---

19 See Mendes Junior Intern. Co. v. Banco do Brasil, S.A., 215 F. 3d 306, 313-314 (7th Cir. 2000) ("a Rule 58/54/59 order cannot resuscitate an expired [time limit]".)

59(e) ruling did not resolve any "genuine ambiguity" in the original order. The magistrate Crocker merely allowed the defendants to slither their way out of a prior concession they made. The Court claimed to have "...misread defendants' contention that code trumps policy, dkt. 229 at 2. This caused me to incorrectly conclude that defendants were conceding that Westra had erred. Defendants made no such concession.". See DKt.# 266, Page 2. There was a **clear cut concession** by Westra that the DAI Policy trumps the DOC Policy:

"Q: Can a hearing officer opt to send a check to the state general fund instead of returning it to the issuer?

A: Not according to policy, no.

Q: So if that was done in a case, that would be an incorrect disposition, is that your testimony?

A: Yes."

See Prude v. Meli, 2024 WL 3858836, at *5 (W.D. Wis. August 19, 2024).

(D) When my attorney's asked Westra can "a hearing officer opt to send a check to the state general fund [under policy DOC 303.09(2)] instead of returning it to the issuer

[under policy DAI 306.00.16]?", the defendant said "Not according to policy, no.". My attorney's question was effectively asking if a hearing officer could follow 303.09(2) over 306.00.16, which Westra unambiguously said "Not according to policy, no". This was a clear concession so this court's order (DKt.#266) was not clearing up a "genuine ambiguity" under precedent from Charles v. Daley, Id. at 348. Thus, Crocker's order which claims to "clarify" its order is a sham and was nothing more than a method employed to immunize the defendants misconduct because the court felt I engaged in misconduct based on its one-sided[20] view of defendants claims that I engaged in misconduct. These arguments are in support of why the defendants 59(e) motion did not restart the 14 days under Rule 54(d)(2)(B)(i). Charles v. Daley, Id. at 348.

(37) The fact of the matter is that all Seventh Circuit Court of Appeals precedents from different contexts (i.e. 2254 Habeas Corpus, notice of appeal time limits, 59(e) time limits) only support a tolling or restarting of a separate

---

[20] For example, Crocker's August 19, 2024 order (DKt.#260) did not factor in none of the facts or arguments I made which show the defendants did not prove the standards surrounding their burden that I fabricated documents. The Court did not say a single word about the defenses I made.

or the same time limit only if the filing was timely. It makes no sense to toll time that previously expired.[a] To mix metaphors: once the shot-clock expires on a basketball court a player (or the coach) cannot call a time out after-the-clock-hits-zero. The defendants had no time left on the clock to be tolled. The decisions from other jurisdictions this Court cited that holds otherwise has no control over Seventh Circuit Court of Appeals authority. Moreover, the law in the 7th Circuit on "tolling" stops the clock on remaining time, not restarts anew. See generally Gray v. Zatecky, 865 F.3d 909, 912 (7th Cir. 2017).

## Conclusion

(38) I request this court grant my Rule 60(b)(4) motion based on the facts and arguments above at par 1-35 by voiding every decision magistrate Crocker made after remand from the Court of Appeals. I also seek to have this Court grant my Rule 59(e) motion based on the facts and arguments above at par 36-37 by vacating the 11-21-2024 (Dkt.#288) order declaring defendants motion untimely.

Terrance Prude *Terrance Prude* Date: 11/27/2024

---

[a] The defendants motion for attorney fees (Dkt.#275) invoked the "judgment" from 8-19-2024 (Dkt.#260), not the 9-20-2024 "judgment" (Dkt.#266) anyways. Defendants did not invoke the 9-20-2024 judgment, or its "tolling" argument, until I raised the untimely issue. New defenses raised [illegible] first in a reply brief is illegal. U.S. v. Diaz, 533 F.3d 574, 577 (7th Cir. 2008).

# Exhibit #20

- 7-Pages (Single Sided)

[Exhibit #20] [Page 1 of 7]

# ICE RECEIPT
# COMPLAINT NUMBER WSPF-2025-8128
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 06/11/2025 |
| Date Complaint Received: | 06/11/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges bias on the part of a staff member. |

This is to acknowledge the complaint you filed which was received on the date indicated. Depending on the nature of the complaint, you may or may not be interviewed by the ICE. A recommendation on the complaint will be made and submitted to the appropriate reviewing authority within 30 days of acknowledgement. A decision will be made by the appropriate reviewing authority within 15 days following receipt of the recommendation unless extended for cause.

**Please write to the ICE if this issue is resolved before you receive an answer.**

Case 2:25-cv-01083-WED Filed 07/24/25 Page 128 of 136 Document 1-1

[Exhibit #20] [Page 2 of 7]

# ICE REPORT
# COMPLAINT NUMBER WSPF-2025-8128
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

Date Complaint Acknowledged: 06/11/2025 Inmate Contacted? No

Date Complaint Received: 06/11/2025

Subject of Complaint: 1 - Staff

Document(s) Relied Upon: WSPF-2025-6472
DAI-2025-98592

Brief Summary: Alleges bias on the part of a staff member.

Summary of Facts:

Mr. Prude alleges the Warden was bias in a response to a request to use his release funds to pay a court fee.

This examiner reviewed the request with submission with a response date of 30MAY2025 stating;

This subject matter is currently under review within the Inmate Complaint Review System (ICRS). I dismissed complaint WSPF-2025-6472 on 5/08/25 as the Reviewing authority (RA) and it was dismissed by the Corrections Complaint Examiner (CCE) on 5/28/25. This complaint awaits the decision of the Office of the Secretary. I will
not address this matter further, outside the ICRS.

This examiner then reviewed WSPF-2025-6472, a complaint challenging the denial of use of the referenced funds, and found it in fact was still under review by the Office of the Secretary.

Therefore, based on the fact the issue was still under the review of the OOS, The facility Warden was appropriate in recusing herself from acting on the request until such time as a decision was made. It is therefore recommended this complaint be dismissed.

ICE Recommendation: Dismissed

Recommendation Date: 06/11/2025

DEPARTMENT OF CORRECTIONS
Department of Adult Institutions
DOC-401 (Rev. 04/18)

[Exhibit#20] [Page 3 of 7]

WISCONSIN
Administrative Code
Chapter DOC 310

**ICE REPORT**
**COMPLAINT NUMBER WSPF-2025-8128**
*** * * ICRS CONFIDENTIAL * * ***

D. Goff - Institution Complaint Examiner

Print Date: June 16, 2025
Page 2 of 2
Institution Complaint Examiner's Office
**ICRS CONFIDENTIAL**
Case 2:25-cv-01083-WED Filed 07/24/25 Page 130 of 136 Document 1-1

[Exhibit #20] [Page 4 of 7]

# REVIEWING AUTHORITY'S DECISION
# COMPLAINT NUMBER WSPF-2025-8128
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Complaint Acknowledged: | 06/11/2025 |
| Date Complaint Received: | 06/11/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges bias on the part of a staff member. |
| ICE's Recommendation: | Dismissed |
| Reviewer's Decision: | Dismissed |
| Decision Date: | 06/16/2025 |

P. Jaeger - Warden

A complainant dissatisfied with a decision may, within 14 days after the date of the decision, appeal that decision by filing a written request for review with the Corrections Complaint Examiner on form DOC-405 (DOC 310.12, Wis. Adm. Code).

[Exhibit #20] [Page 5 of 7]

# CCE RECEIPT
# COMPLAINT NUMBER WSPF-2025-8128
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 06/23/2025 |
| Date Appeal Received: | 06/23/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges bias on the part of a staff member. |

Your request for review has been received.

The Corrections Complaint Examiner (CCE) has 45 days to submit a recommendation to the Office of the Secretary (OOS) for Review. The OOS has 45 days to make a decision after receiving the CCE's report. The OOS may extend the time for making a decision for cause and upon notice to all interested parties.

If you do not receive a decision or other notices within that time, you may write directly to:

Secretary of the Department of Corrections
Post Office Box 7925
Madison, WI 53707-7925

[Exhibit #20] [Page 6 of 7]

# CCE REPORT
# COMPLAINT NUMBER WSPF-2025-8128
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 06/23/2025 |
| Date Appeal Received: | 06/23/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges bias on the part of a staff member. |
| Method of Disposition: | Review on Record? Yes Investigation? No |
| Document(s) Relied Upon: | Complaint, correspondence, ICTS, appeal |
| CCE's Recommendation: | Dismissed |
| | The complainant's issue has previously been addressed through the complainant system: WSPF-2025-6472, WSPF-2025-7413, and WSPF-2025-7612 |
| Recommendation Date: | 06/25/2025 |

Emily Davidson

E. Davidson - Corrections Complaint Examiner

[Exhibit#20] [Page 7 of 7]

# OFFICE OF SECRETARY DECISION
# COMPLAINT NUMBER WSPF-2025-8128
# * * * ICRS CONFIDENTIAL * * *

**To:** PRUDE, TERRANCE D. - #335878
UNIT: _F-R2 -- _223-_L
WISCONSIN SECURE PROGRAM FACILITY
PO BOX 1000
BOSCOBEL, WI 53805-1000

**Complaint Information:**

| | |
|---|---|
| Date Appeal Acknowledged: | 06/23/2025 |
| Date Appeal Received: | 06/23/2025 |
| Subject of Complaint: | 1 - Staff |
| Brief Summary: | Alleges bias on the part of a staff member. |
| OOS Decision: | Dismissed |
| Decision Comments: | The following is the Secretary's decision on the Corrections Complaint Examiner's recommendation of 06/25/2025 in the above appeal: The attached Corrections Complaint Examiner's recommendation to DISMISS this appeal is accepted as the decision of the Secretary. The complainant has exhausted his administrative remedies in regard to the issue raised in WSPF-2025-6472. |
| Decision Date: | 07/01/2025 |

C. O'Donnell - Office of the Secretary

# Exhibit #21

- 1-Page (Single Sided)



# WISCONSIN DEPARTMENT OF CORRECTIONS

Governor Tony Evers / Secretary Jared Hoy

**Wisconsin Secure Program Facility**

Prude, Terrance D - 335878
UNIT: _F-R2 - _223_L
Wisconsin Secure Program Facility
P.O. BOX 1000
Boscobel, WI 53805-1000

[Exhibit#21]

07/08/2025
DAI-2025-100953

Your correspondence dated June 30, 2025, challenging the Constitutionality of DAI Policy has been received and reviewed.

This subject matter has been previously addressed through the Inmate Complaint Review System (complaints WSPF-2025-6472, WSPF-2025-7612, and WSPF-2025-8128) and all were dismissed by the Office of the Secretary (6/05/25, 6/24/25, and 7/01/25, respectively). The secretary's decision is final and you have exhausted your administrative remedies for this matter.

Sincerely,

P. Stoudt

Paula J Stoudt
Warden

PJS/dsm

CC: File #335878